FANNY SEMEL, AS ADMINISTRATRIX, &C., OF LOUIS SEMEL, DECEASED, Respondent, *against* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

(Decided June 7th, 1880.)

Upon the trial of an action against a railroad company for causing the death of a person crossing the defendant's track, by a collision with one of its trains, alleged to have been due to the negligence of the defendant, a

charge by the judge to the jury that "if the railroad company was guilty of any negligence in notifying the approach of trains or anything else you may think it was their duty to do, they would be responsible for an act which was the result of its omission or commission," is erroneous, as it leaves it entirely within the discretion of the jury to determine what precautions the defendant should have taken; and a verdict for the plaintiff, found under such instructions, cannot be sustained.

APPEAL from a judgment of this court entered on the verdict of a jury, and from an order denying a motion for a new trial.

The plaintiff's intestate, Louis Semel, was struck, on the 7th of June, 1879, while crossing the railway track at a public crossing at Fordham, by an engine of the defendant drawing a train of cars from the city of New York, and was killed. The complaint alleges that said death was caused by reason of the defendant's negligence. Proof was given upon the trial, upon the part of the plaintiff and defendant, for the purpose of establishing the cause of action set forth in the complaint, and the defense as set up in the answer. Various exceptions were taken to the judge's charge. The jury rendered a verdict for the plaintiff, and a motion by the defendant for a new trial was denied. From the judgment for the plaintiff, entered upon said verdict, and from the order denying the motion for a new trial, the defendant appealed.

*Henry A. Anderson,* for appellant.

*E. Lauterbach,* for respondent.

VAN BRUNT, J.—The only questions it is necessary to consider upon this appeal, are exceptions to the judge's charge. The court charged as follows: " If, on the contrary, you believe the defendant neglected any necessary precaution, whether in the providing of signals or men at the station for waving flags, or whatever was necessary to be done under the circumstances of the case, you have a right to take all those circumstances into consideration to find whether they were guilty of any negligence; and that is a matter solely within your discretion. Did it do all that a corporation or individual should do under

the circumstances, in view of all the surroundings, necessary to give notice to parties approaching that station, and to protect human life ? Bear in mind, as the proof shows, that this was a public highway, and people had a right to cross it, and if the railroad company was guilty of any negligence in notifying the approach of trains or anything else you may think it was their duty to do, they would be responsible for an act which was the result of its omission or commission."

And again : "That the company was obliged to use every precaution to protect human life, and you are to take into consideration whether it be a bell or whistle, or whatever it is, the peculiar situation of this place. What might not be dangerous in one place might be dangerous in another. It has been testified that this was a race-day, and there were numbers of people attending the races. You will take into consideration, in estimating the degree of care which the company was chargeable with, circumstances of this character."

The scope of this charge, which was excepted to, left it entirely within the discretion of the jury to determine what precautions the defendant should have taken to protect persons in guarding its track. It gave no criterion as to what degree of care they should exercise, neither did it indicate in any way to the jury any standard by which negligence upon the part of the corporation could be measured by them. The portions of the charge excepted to would seem to be directly contrary to the rule laid down in the court of appeals in the cases of *Grippen* v. *New York Central R. R. Co.*, 40 N. Y. 34, and *Beisiegel* v. *New York Central R. R. Co.*, 40 N. Y. 9. In the case of *Grippen* v. *New York Central R. R. Co.*, the instruction objected to was, "The object of ringing the bell is to have it heard; it is the signal of the approach of the cars at the crossing, and it should therefore be rung under circumstances likely to give notice to passers by if it is to be of any use. The literal provision of the statute may be perhaps satisfied by having it rung at its proper place on the car and while crossing over any particular position. There may be circumstances which require that this particular signal, or some other signal calculated to give notice to passers by, whether on foot or with a vehicle, should be given

at a crossing. You are to determine what signal would be sufficient and whether such signal was in this case given."

The learned court, in commenting upon this charge, used the following language : " Are railroad companies bound, as matter of law, besides or beyond complying with the require-ments of the statute, to give such signals of the approach of their trains as a jury may deem sufficient to give notice to passers at a crossing ?

" This inquiry does not pertain solely to the subject of ring-ing a bell or giving other particular notice. It equally em-braces another portion of the instructions given to the jury in this case. The defendants had no flagman at the crossing in question, and the plaintiffs claim that this was negligence in the defendants. While on the other hand, the defendants re-quested the court to charge, that the defendants were under no legal obligation to station a flagman or signalman at the crossing in question. This was refused, and to the refusal, and to various parts of the charge, on this subject, the defend-ants excepted. Thus, the judge charged : ' There is no statute law, making it imperative upon the defendants to maintain a flagman at this station ; but this does not absolutely determine whether or not it was not incumbent upon them to do so. They are held to the use of proper care, and it is for the jury to say whether this, under the circumstances, did or did not require of the defendants to maintain a man at this crossing.' "

The learned judge before whom this case was tried, further charged : " I leave it for you to say, under all the circumstances, whether a flagman at this station, as a measure of proper cau-tion, was or was not required of the defendants."

In commenting upon this portion of the charge, the learned court say : " These instructions are in harmony with the previous direction given to the jury, in regard to signals generally, already above quoted. If railroad companies are bound by law to give such signals of the approach of their trains as a jury may deem sufficient to give notice to passers at a crossing, then, as was instructed here, the jury may include flagmen, and any other means of notification they may deem sufficient, and hold the omission negligence."

" We apprehend that railroad companies do not run their trains under the pressure of any such rule of law, and that the means which it is their legal duty to employ to prevent third persons from sustaining injury, are not dependent upon any such broad discretion, legally intrusted to a jury."

The court further say that " The legal duty, which (irrespective of any statute) rests upon a railroad company, is to run their engines and cars carefully, prudently, with a caution proportioned to their prodigious power to injure, and governed by a regard for the time, and place, and all other circumstances affecting the liability of third parties to receive injury, while in the exercise of reasonable care and prudence on their part. Neglect of this subjects them to a just responsibility for the consequences to such persons injured thereby.

" And, on the other hand, the reasonable care and prudence required of third parties is in like manner governed by time, place, and circumstances of danger, which it becomes them to hold in view when exercising their unquestionable right to cross the railroad track.

" This high measure of duty on the part of the railroad company, the statute, prescribing notices by signboards at road or street crossings, the ringing of the bell, or the blowing of the whistle, has not relaxed in any degree. As a rule of duty, it stands as stringent and inflexible, founded in common law and the plainest right, as if there were no such statute. Compliance with the statute is, of course, one of the circumstances under which they run their trains, and, incidentally, such compliance may make it consistent with due care and caution, to do what, without using such signals, would (even if there were no such statutes) be negligence. But the rule stands, and the statute stands with it; both must be satisfied, and hence it is properly said, the statute does not constitute the sole rule of duty. The common law still requires the exercise of care and prudence in the running of their ponderous engines and heavy trains through an inhabited country : and that care and prudence increases in degree as they enter towns, villages, and cities, and cross their thoroughfares.

" From this duty there should be no abatement. Nor, on

the other hand, should the obligation of third persons to be prudent and careful be, in any degree, relaxed. As has been well suggested, in relation to this subject, when the question becomes, as in ordinary cases it is, one of life and limb, not only to the unfortunate third party who encounters a collision, but to the hundreds of passengers in a train, the duty of third persons to the company, and to them, to be diligent in the use of precautions, is hardly less than that of the company to him. He who negligently, as well as one who willfully, casts an obstruction upon the track, is rightfully subject to severe condemnation and punishment. And one who, through any want of reasonable prudence, thrusts his vehicle before an approaching train, is not much less reprehensible.

" The point of departure from the doctrine of the court below is precisely this : If the company have satisfied the rule of duty above stated, *i. e.*, in view of all the circumstances under which they are acting—the time (whether by night or by day), the place (whether in the open country or in a town, village or city), the liability of third persons to receive injury (whether at a crossing of a country road or of a street in a populous town or city), the character of the avenues of approach on either part (whether there be sharp curves or corners, or there be buildings or other obstructions hiding the train from view till at a moment before crossing), the headlight or other signals they deem it expedient or do, in obedience to the statute, in fact, bear with them, and any other circumstances (darkness or light, storm of snow or wind) which, in the particular case under examination, are relevant to the subject— have acted with careful prudence, they are not to be held responsible for an accident, because they did not go further and give notice that they were doing so.

" It is not, when they have done this, to be left broadly to a jury to say whether, if they had placed a man or men alongside the track, or at crossings, to compel or to notify third parties to be also careful, it would not be a sufficient notice, and one which they were bound to give."

It would seem to be clear that the leaving to the jury entirely for them to say whether " the railroad company was

guilty of any negligence in notifying the approach of trains or anything else you may think it was their duty to do," under the authority above cited, was clearly erroneous. It is precisely leaving the question in the broad way in which it was left in the above case. The case of Beisiegel, above referred to, is a further illustration of the error contained in the charge of the learned judge who tried the case in the court below. It is decided in that case that the law does not require a railroad company to station a flagman at every street or railroad crossing, while a jury may be of the opinion that the travel is so great that ordinary prudence requires such precaution for the purpose of keeping travelers off such crossing when trains are passing over it. In this case the learned judge charged that it was a question for the jury to determine whether St. Joseph street (the crossing in question) was such a populous portion of the city that it was due to the public safety and common prudence, in view of the high powers exercised by the company, passing with the high speed at which they run their trains, that they should keep a flagman at that point. That if they thought it was an omission of a precaution which, in ordinary prudence and care, the company was called upon to practice, then it was negligence to omit that duty. The learned court, in deciding that case, say :

" It thus appears, that the jury were instructed that they were at liberty to find the defendant guilty of negligence solely on the ground of an omission to keep a flagman at the crossing, if they were of opinion that ordinary prudence required one there, although finding that in every other respect the defendant had performed its duty ; as all the other grounds upon which negligence was imputed were controverted questions of fact. The question is thus fairly presented, whether a railroad company is required by law to station a flagman at every street or road crossing where, in the opinion of a jury, the travel is such that ordinary prudence requires it, for the purpose of warning and keeping travelers off from such crossings when trains are passing over them. This is an original question in this court, and must be determined upon principle and the analogies of the law. It has

been remarked in the opinions, in some cases, that railroad companies are bound to use all possible care to prevent injury to travelers at crossings. If this be so, it is manifest that such injuries may be entirely prevented, as means might be adopted, such as would entirely prevent any person being upon the crossings, or within the reach of trains when passing. These remarks were not essential to the cases adjudicated. No case has been determined by the court upon any such principle.

"Railroads are authorized by statute to construct their roads, and run their trains across streets and highways. The same statute provides that they shall give certain signals for the purpose of warning travelers of their approach and presence; such signals being, in the judgment of the legislature, sufficient to protect the public from injury in the use of the crossings. Keeping a flagman at the crossings, or any of them, is not required by statute; nor does the statute require the company to give warning to travelers otherwise than as therein provided. The question is, whether the common law requires the company to warn travelers of approaching trains by other and more effective means than those the statute requires. The claim that it does is based upon the maxim, that every one must so use his own as not to injure another. In applying the maxim to the present case, it must be borne in mind, that the traveler and railroad have each an equal right of way in the crossings, derived from the same authority. The former for the purpose of travel, and the latter for running its trains. A collision is somewhat dangerous to the trains, but vastly more so to the traveler. The law imposes upon both the duty of observing care to avoid them. But the care imposed upon the company is in operating its trains; in so transacting its business, in the exercise of its right of way, as not to injure others in the exercise of their similar rights, provided the latter exercise due care on their part. This relates to the mode of operating the trains, and all other things done by the company in the transaction of its business. It does not require the company to employ men to keep travelers off the track, or to serve notices upon them that trains are approaching. Should the company do this, it would relieve the traveler

from all necessity of exercising care in this respect; and it would, indeed, be safe for him to go upon the track, having received no express warning. If the exertions of the flagman were, in any particular case, inadequate to prevent injury to a traveler, upon the same principle, it might be submitted to a jury whether ordinary prudence did not require gates to be closed at certain crossings, while trains were passing, or something else done to protect the traveler; and if, in their judgment, it did, to instruct them that such omission was negligence. If the charge in the present case is sustained, I can see no limit to what is required of the company to exonerate it, upon the ground that it has been free from negligence, except it has done everything, outside of the transaction of its business, that, in the opinion of a jury, prudence required. Such is not the true application of the maxim. As above remarked, it requires such care in conducting the business of the company as will prevent injury to others in the exercise of their rights, if proper care is observed by them; but it requires nothing to be done by the company outside of such business, to give warning to travelers outside of the track. The obligation upon the company to do the latter is imposed by statute; and all that can be required of the company, in this respect, is a strict observance of the statute. It it true, that the company may employ men to keep travelers off from the crossings when the trains are passing; and if they do this, it will be safe for them to run at greater speed, or in other respects different from what would be otherwise permissible; but this is a matter to be determined by the company, and cannot be imposed as a legal duty, except by the legislature."

In principle the charge commented upon in the case cited is precisely the same as that under consideration.

It is impossible for me to state the proposition with more clearness and force than has been stated by the learned judge who wrote the opinion of the court of appeals in the case cited. It would therefore clearly appear that making the jury the sole judges of what in their opinion the railroad company should do in notifying the approach of trains, or anything that

the jury might think it was their duty to do, was clearly erroneous..

Our attention is called to the case of *McGrath* v. *New York Central R. R. Co.*, 63 N. Y. 529. In that case the question of a flagman was discussed, but no such proposition as was contained in the cases previously cited, and as was contained in the charge in the case at bar, can be found in the case of McGrath. In the case of McGrath it appeared from the evidence that the company had been in the habit of keeping a flagman at the crossing, and it was held that proof that he was absent at the time of the accident was competent as bearing upon the question whether, under all the circumstances, defendant ran and managed its train with the requisite care and prudence.

It is true that it is claimed on the part of the respondent that the action of the flagman upon the occasion of this accident, was such as might be considered by the jury in determining the question as to whether the deceased was guilty of negligence or not. But that is not the proposition which is criticised. The objection is, that the jury were left to be the sole judges of what it was necessary for the railroad company to do in notifying the approach of their trains.

In the cases cited—Beisiegel and Grippen—it is clearly held that such a charge is erroneous.

It seems, therefore, that the exception was well taken, and the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

J. F. DALY, J., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.