FREDERICK HOLLENDER *et al.*, Respondents, *against* THE NEW YORK CENTRAL AND HUDSON RIVER RAIL- ROAD COMPANY, Appellant.

(Decided April 4th, 1887.)

At the trial of an action against a railroad company for negligently killing plaintiffs' horses, the evidence showed that defendant, in the night-time, backed a train into a dark freight depot, without any light

or other signal of its approach, so noiselessly and suddenly upon plaintiffs' servant, who was lawfully at the depot with the horses, that he was unable, either from fright or want of time, to get them out of the way, and the train ran over them and killed them. *Held*, that this was sufficient to justify a finding by the jury that defendant's carelessness was the sole cause of plaintiffs' loss.

Defendant, against plaintiffs' objection, was allowed to ask the opinion of a witness on a certain point. *Held*, that defendant had no ground for objection to plaintiffs' asking another witness his opinion on the same point.

In an action against a railroad company for negligence in moving a train without proper signals, it is a fatal error to instruct the jury that they are at liberty to determine what signals ought to be adopted, and to regard the omission of them as negligence. It is for the legislature, not for a jury, to determine what signals should be required.

The jury, in such a case, were instructed that, to warrant a verdict for plaintiffs, they " must find that this injury occurred through the fault of the defendant or its servants "; and, at plaintiffs' request, that " it is for the jury to say whether the defendant had done all that was necessary to protect the plaintiffs." *Held*, that this referred to the management of the train by those in charge of it, and whether such trainmen did all they ought to have done to give notice of its approach; and was not objectionable as leaving to the jury to determine whether defendant was chargeable with negligence because it had not employed all the safeguards that the jury might think necessary.

APPEAL from a judgment of the General Term of the City Court of New York affirming a judgment of that court entered upon the verdict of a jury.

The action was brought to recover damages for the loss of horses killed by a collision with defendant's railroad train, alleged to have been caused by negligent management of the train.

At the trial it appeared that plaintiffs' driver had driven their horses with a truck to defendant's freight depot at St. John's Park in the City of New York, about seven o'clock in the evening, and backed the truck against a car to unload merchandise from the car into the truck, turning the horses' heads around so as to clear an adjoining track; that having loaded his truck, he started the horses forward; and while they were on such adjoining track, a train of freight cars backed on that track into the depot, in the

manner and under the circumstances stated in the following opinion, struck the horses, and killed them.

One Charles Manning, a truck-driver, called as a witness by defendant, was allowed, notwithstanding plaintiffs' objection, to testify as to his knowledge of the locality and the ability of a driver, by proper skill and diligence, to have avoided such collision. Plaintiffs afterward called another truck-driver, Charles Jacobs, and questioned him on the same point, to which defendant excepted.

The jury found a verdict for plaintiffs. From the judgment entered thereon, defendant appealed to the General Term of the City Court, which affirmed the judgment; and from that decision defendant appealed to this court.

*Frank Loomis*, for appellant.

*John E. Brodsky*, for respondents.

VAN HOESEN, J. — There was ample proof that the plaintiff's servant was free from negligence, and sufficient proof of the negligence of the defendant to require the submission of the case to the jury. The evidence made it clear that the defendant, in the night-time, was engaged in backing a long train of nine freight cars into the freight depot at St. John's Park, where it was dark; that the dummy engine was at the end of the train remote from the depot; that there was a curve near the entrance; that the movement of the train was nearly noiseless; that there was no light at the end of the train that was entering the depot, and no one to give notice of the approach of the train; that the train stole noiselessly upon the plaintiffs' servant, who was lawfully in the depot, and came upon him so suddenly that he was unable, either from fright or from want of time, to get his horses out of the way, and that the result was that the train ran over the horses and killed them. If the defendant had gone to the expense of a lamp, in all probability it would not have been the defendant in an action for carelessly killing the horses. The jury, upon the evidence, was

justified in finding that the defendant's carelessness in running its train in the dark, and without notice by light, noise, or voice that it was entering a dark depot, where men and teams were known to be, was the sole cause of the loss that the plaintiff sustained (71 N. Y. 231).

The exception to the testimony of Charles Jacobs is not tenable. The defendant asked its witness Charles Manning the very question that it objected to when it was propounded by the plaintiff to his witness Jacobs. It was for the purpose of meeting the opinion of the witness Manning with the opinion of the witness Jacobs that the plaintiff, on the rebuttal, asked the question to which the defendant objected. If opinion evidence were incompetent, the defendant ought not to have set the example of introducing it (*Scattergood* v. *Wood*, 79 N. Y. 263). Against the objection of the plaintiff, the defendant succeeded in inducing the court to receive opinion evidence as to the practicability of so managing the team that they could have been saved. Having thus established the law of the case, the defendant cannot be permitted to object that the court continued to apply it in every stage of the trial.

There was no impropriety of which the defendant can complain in the allowance of the question, " Could you have heard a whistle or a bell, if there had been one ? " It was intended to ascertain whether there was anything to prevent the witness from hearing a signal. It was obnoxious to criticism as to its form, for it called for a conclusion upon a hypothetical state of facts, but it was understood to be an inquiry as to whether there was anything to interfere with the sound reaching the ear of the witness (*Renwick* v. *N. Y. Cent. R. Co.*, 36 N. Y. 132–3).

As I understand the charge of the judge, there is no merit in the exception to the instruction that " it is for the jury to say whether the defendant did what was necessary to protect the plaintiff from injury." In my opinion, that instruction was neither intended by the court, nor understood by the jury, as making it a question whether the defendant was not chargeable with negligence because it

Hollender v. New York Central &c. R. Co.

had not employed all the signals and safeguards that the jury might think conducive to the safety of the public. Of course, if it had been left to the jury to say what signals not required by law might advantageously be introduced, and if they had been told that they might find the defendant guilty of negligence if any of those safeguards were lacking, the instruction would have been erroneous. It is settled by a number of decisions that it is a fatal error to instruct a jury that they are at liberty to determine what signals ought to be adopted, and to regard the omission of them as an act of negligence. See *Semel* v. *New Haven R. Co.* (9 Daly 321); *Dyer* v. *Erie R. Co.* (71 N.Y. 228); *Houghkirk* v. *Delaware &c. Canal Co.* (92 N.Y. 219); *Cumming* v. *Brooklyn City R. Co.* (104 N.Y. 669).

The common law imposes certain duties upon those who conduct vehicles. The general duty is to manage the vehicle with the care that a man of ordinary prudence would employ. Whether the vehicle be large or small, likely or unlikely to do injury, slow in moving or rapid, its driver is bound to manage it with common prudence and care. As the likelihood of injury from its use increases, the care with which it should be managed must be increased. The common law prescribed no particular methods of exercising care, nor required any special safeguards for the protection of those not using the vehicles as travellers. When railroads were introduced, the legislature, deeming the common law requirements inadequate for the safety of persons who might wish to cross the track, saw fit to provide that a bell should be rung, or a whistle sounded, whenever a train approached a highway that traversed the railroad line. These signals are as well for the protection of the railroad company as for that of the public, for they warn travellers upon the highway not to endanger the lives of passengers upon the trains as well as their own lives by attempting to cross the track until the train has passed. But it is for the legislature, and not for a jury, to determine what signals a railroad should be required to give. If it were left to the jury, the railroad managers could never know

what they ought to do in conducting their business; for juries would differ in their notions, and what one jury would pronounce a sufficient and proper safeguard might be regarded as utterly worthless by another. The consequence would be that no prescience could protect the railroad managers. They would never know whether they were negligent or not, until some jury had decided what safeguards they ought to have employed; and even after they had been mulcted in damages for negligence, it would be impossible for them to ascertain exactly what signals the jury thought ought to have been used. Hence the courts have uniformly held that it is error to tell the jury that they may find the railroad company negligent if they believe that there are safeguards that could have averted the injury if they had been adopted. In the Semel case the judge said, " If you think the defendant neglected any necessary precaution, whether in providing signals, or men at the station for waving flags, you have a right to find that it was guilty of negligence ; that is a matter within your discretion." The law does not require the placing of men at the stations, to wave flags. The charge was, therefore, erroneous on that ground, as well as for the reason that the judge afterwards said that the jury could find a verdict for the plaintiff if the defendant was guilty of negligence in anything the jury thought it was its duty to do.

In the Dyer case, the judge fell into a similar error, and the Court of Appeals therefore reversed a judgment in favor of the plaintiff. But Judge MILLER drew a distinction that I think ought not to be overlooked in this case. He said that the instruction would not have been erroneous if it had merely left it to the jury to say whether the trainmen ought not to have done something more than they did actually do, without leaving it to them to say what other signals ought to have been introduced. It is perfectly proper to allow the jury to decide whether the train was managed with common prudence and care, and whether the trainmen did all that they ought to have done, to give notice of the advent of the train. In this case, there is not a word

in the charge that can be construed into a direction to the jury to find the company negligent if it did not use all the safeguards that they might think necessary. The mind of the court was not engaged with anything not connected with the issue that was on trial. The main question, evidently, was one of contributory negligence. To that the greater part of the charge is devoted. At the close, the court said that, to warrant a verdict for the plaintiff, "You must find that this injury occurred through the fault of the defendant or its servants." Then followed a request by the plaintiff's counsel for the instruction that "it was for the jury to say whether the defendant had done all that was necessary to protect the plaintiff." It is obvious that this referred to the management of the train that did the injury, and to nothing else. So understood, the instruction was not erroneous (71 N. Y. 233 ; 104 N. Y. 669).

The judgment should be affirmed, with costs.

LARREMORE, Ch. J., and J. F. DALY, J., concurred.

Judgment affirmed, with costs.