[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 357 
The evidence in the case was, on some points, conflicting, but the jury were authorized to find, and, upon the defendant's appeal, we must presume that they found the facts in conformity with the plaintiff's proof. By this it appeared that the plaintiff's testator was run over and killed at the Ferry street station, in the city of Buffalo, by the engine of a freight train, belonging to the defendant, moving southerly at the rate of from twenty to thirty miles an hour. He was a passenger on a train going northerly from the Exchange street station, Buffalo, to La Salle, and beyond, and had traveled *Page 360 
three miles of the distance when he reached the Ferry street station, where the train was accustomed to stop for the purpose of taking on and letting off passengers. As the passenger train reached the station-house, after it had been called by the brakeman, and while it was going slowly, but had not yet entirely stopped, the deceased stepped down from the second car upon its westerly side upon a plank-walk, or platform, and proceeded along by the side of the moving train for some forty or fifty feet when he attempted to cross over the westerly track. Before this the passenger train had entirely stopped. When he reached a point about ten feet from the passenger train, and being then between the rails of the westerly track, he was struck by the engine of the freight train which was backing down in a rapid manner. The whole transaction occurred in front of the station-house, and within the station yard, upon ground where passengers were accustomed to pass and repass in going from and coming to the trains. The rules of the defendant required freight trains to approach stations slowly, and to stop before reaching stations at which a passenger train is landing or receiving passengers. The freight train came from the north, and at the distance of about 300 feet from the station was visible, although partially concealed from the view of those standing at the station by a curve in the road, and also by trusses upon a bridge over Ferry street, running immediately north of the station grounds, which trains going south were obliged to cross before reaching the station. The deceased was, when struck, about twenty feet south of the bridge. He was seen walking quite rapidly to the north, in the direction of the approaching train, when he turned and started to go across the track, and as he saw the train attempted to jump but failed to prevent a collision, and was struck while in the act of jumping to avoid it. It did not appear for what purpose the deceased was going across the westerly track, but it was stated that he sometimes got off and communicated with relatives or friends, who lived next the station yard, on the west side, as he passed over the road.
As the deceased walked along the track he was necessarily *Page 361 
looking in the direction from which the freight train was approaching, but no positive proof was given that he looked towards it immediately before he was struck, and it is not probable that he could have seen it if he had looked when he first alighted, or for some seconds thereafter. Not to exceed ten seconds elapsed between the time when he alighted from the train and that when he was struck, and during that time the engineer of the passenger train was exhausting its steam, making a loud noise. The freight train was running probably at the rate of forty feet a second and, when the deceased first alighted, was probably beyond the line of his vision.
We are of the opinion that the case was, in all of its aspects, one for the jury. The point made by the appellant that there was a variance between the cause of action proved and that laid in the complaint is not well taken. The complaint stated all of the facts necessary to maintain the action, and complied with the requirements of the Code in that respect. Evidence was given tending to support the allegations of the complaint, and it was for the jury to find whether they had been proved or not.
The contention that the negligence of the defendant, as alleged, consisted only of its omission to perform the duty which it owed to the deceased as a passenger, is founded upon a misconstruction of the language of the complaint. We think it immaterial whether the deceased, when he alighted from the passenger train, ceased to be a passenger or not. He was certainly neither a wrong-doer nor trespasser by so doing. He might thereby have subjected himself to increased risks, for which he would have no redress against the railroad company, but if he should be afterwards killed by the gross negligence of the company without fault on his part, the company would be liable. This was the case stated by the complaint. The defendant also claims that it was not negligent in running its freight train through the station at a high rate of speed while a passenger train was there engaged in taking on and loading passengers. This claim is mainly based upon evidence that *Page 362 
the engineer in charge was temporarily disabled from controlling his engine by an accident received from the lever which slipped from its position, after being reversed, and struck him a violent blow. The argument is that the engineer had performed his whole duty, in respect to stopping the train, by reversing the lever and shutting off steam. Some evidence was given for the defendant by its employes that they were not cognizant of any means of retaining the lever in its place after being reversed, except what were in use on this engine. Other experts, however, gave evidence tending to show that such an accident could not occur if the lever was properly reversed, except from a defective appliance. It, however, requires no expert to determine these facts, for it is obvious to the most ordinary comprehension that a reliance upon a lever which is liable to be forced from its place by the natural action of the machinery, in a matter of such importance, is an act of the grossest carelessness. The remedies for such a fault are so numerous and common that they must be presumed to be within the knowledge of all intelligent persons. We think it an alarming proposition to assert that a railroad company is to be excused from the consequences of running trains at great speed through stations, or in the streets of a populous city, because of an impossibility of its servants to control the powers which propel them. If this lever was liable to be displaced by the working of the machinery, it was the plain duty of the engineer to hold it in its position until the stoppage of the train had produced a compliance with his instructions and removed the danger. This would have required his attention for, possibly, ten seconds of time. The negligence of the company in running its train through the station at a high rate of speed is recognized by the rules of the company, and it is too obvious to require discussion.
A more difficult question arises over the allegation of contributory negligence on the part of the deceased. We do not think that a passenger on a railroad train loses his character as such by alighting from the cars at a regular station from motives of either business or curiosity, although he has not *Page 363 
yet arrived at the terminus of his journey. It cannot properly be said, we think, if a passenger leaves a train for the purpose of obtaining refreshments at a regular station, or transacting business during its stay there, but intending to return and continue his passage, ceases to be a passenger or loses the right of being protected by the regulations which the company have provided for the safety of persons traveling on its cars and using its station-grounds. He may not stand upon the tracks or go thereon without using the care and caution required of prudent persons under the circumstances of the case; but if a person under such circumstances is injured, by the omission of the servants of the company to obey rules adopted for the protection of persons in that situation, we think it becomes liable for injuries thus received. The rule which prescribes it to be the duty of persons to exercise care and caution in going upon railroad tracks and to use their senses of seeing and hearing for the purpose of discovering and avoiding dangers, is one frequently found in reported cases, and, as a general rule, is salutary and just. But the duty of active vigilance must be adapted to the circumstances of the case, and if the offending company has by its own conduct and by its published regulations led the public to believe that trains would not be run on its tracks at specified times and places, persons having occasion to cross them have the right to rely on the assurance of the company and are not necessarily guilty of negligence when injured by prohibited trains while doing so. The deceased was justified in supposing that no rapidly moving train would come into the station while he remained in the yard and was engaged in communicating with his friends on the west side. He had frequently done so before and had been lulled into a sense of security by the immunity which he had before enjoyed and the reliance which he placed upon the care exacted of its servants by the railroad company. It is quite doubtful whether he was able to see the freight train until he approached near the place where he started to cross the westerly track, as it was, presumptively, approaching at *Page 364 
the rate of at least forty feet per second, and the jury were justified, from the evidence, in finding that he had looked in the direction in which he was walking and did not see the train. That he did not hear it is quite conceivable as the exhaust steam of the passenger engine made considerable noise, and the witnesses generally agree that no one saw or heard the freight engine until it got upon the bridge, and, after that, it passed the station in an instant of time. Having once looked and seeing no train, he had a right to assume that none would be coming at such a rate of speed as would preclude him from crossing a single track. It is probably true that if he had looked both ways at the moment of stepping upon the track, he could have seen the approaching train, but that might be said of almost every accident of a similar character, and is a degree of vigilance seldom adopted by anyone, and would require the impossible feat of looking in opposite directions at the same time, or anticipating the point from which he was to be assailed. The law does not require this; neither is there any rule which will defeat a recovery in cases of this kind merely because it was possible for an injured person to discover an approaching train. The law does not forbid persons from crossing railroad tracks or impose upon them exclusive responsibility for damages incurred in making such an attempt. The question is, whether the injured party, under all of the circumstances of the case, exercised that degree of care and caution which prudent persons of ordinary intelligence usually exercise under like circumstances. This rule must in all cases, except those marked by gross and inexcusable negligence, render the question involved one of fact for the jury.
We think the jury could properly find that the deceased did, under the circumstances of this case, exercise such care and caution as exempted him from the imputation of negligence. (Terry v. Jewett, 78 N.Y. 338; Brassell v. N.Y.C. H.R.R.R. Co., 84 id. 241; Archer v. N.Y., N.H. H.R.R. Co.,
106 id. 589.)
The defendant also claims that the court improperly allowed *Page 365 
the plaintiff's counsel to cross-examine the witness Marsh and prove why he was discharged from the defendant's employ some eighteen months after the accident in question. The question objected to was: "What was the occasion of your going when you did go?" This question was competent on the question of the witness' credibility, and if competent for any purpose, the objection to it was not well taken, although counsel claimed it to be admissible on an erroneous ground. The witness did not answer this question, and the question was then put "what was the occasion of your leaving the company's employ?" This was not objected to and the witness answered, "I was coming into Black Rock yard with a coal train and had a collision with a switch engine pulling off the branch with another train." Question. "Did they discharge you for it?" Answer. "Yes, sir." The defendant then made its objection and took its exception. The evidence was then already before the jury without exception, and the defendant's remedy was to move to strike the evidence out. This he did not do. We think, therefore, the defendant did not raise the question properly; but if we were of the contrary opinion, we should not be inclined to reverse the judgment upon this ground. If the evidence tended in any way to injure the defendant, it was upon the question of the negligence of the defendant. This was established by evidence beyond dispute, and the testimony of this witness could not be said to have affected it. All of the evidence goes to show that the defendant ran its train at a high rate of speed through a crowded station in violation of its published rules.
There was practically no question for the jury in respect to the question of the defendant's negligence.
The case was submitted to the jury upon a charge eminently favorable to the defendant, and we think it had no reason to take exception to it.
Some few other exception were taken to the rulings of the trial court in the admission of evidence, but we think no *Page 366 
errors were committed which authorize the reversal of this judgment.
The judgment should, therefore, be affirmed.
All concur, except EARL and GRAY, JJ., not voting.
Judgment affirmed.