### TUCKER *v.* NEW YORK CENT. & H. R. R. CO.

*(Superior Court of Buffalo, General Term. November 8, 1890.)*

**1. RAILROAD COMPANIES—NEGLIGENCE—ACCIDENTS AT CROSSINGS.**

At a railroad crossing freight-cars were standing on a side track with an opening between them, the ends of the cars projecting over the sidewalk. A boy, approaching from that side of the railroad, carrying a bag, set it down on the bumper of the car, looked around, and, taking the bag, passed on, but was struck on the next track by an engine, and killed. It was snowing, and the wind was blowing at about 40 miles an hour. In an action against the railroad company, the evidence as to whether the bell of the engine was rung and the whistle blown in time to warn the boy, and as to the speed at which the engine was moving, and whether the flagman at the crossing was at his post, was conflicting. *Held*, that a motion to direct a verdict for defendant was properly denied.

**2. EVIDENCE—RELEVANCY.**

The admission of evidence that the flagman was lame was unobjectionable.

**3. TRIAL—INSTRUCTIONS.**

A witness testified that deceased, before crossing, faced towards the direction from which the engine came, and that his eyes and all his movements were in that direction. *Held*, that a request to charge the jury that there was no evidence that he looked for an approaching train was properly refused.

Appeal from trial term.

Action by Samuel Tucker, as administrator of the estate of George James Tucker, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff entered on the verdict of a jury, defendant appeals.

Argued before TITUS and HATCH, JJ.

*McMillan, Gluck & Pooley,* for appellant. *Andrews & Hill,* for respondent.

TITUS, J.   This action was commenced to recover damages for killing the plaintiff's intestate, a boy 12 years of age, by the defendant, while crossing Smith street, in this city, on the 27th day of December, 1888.   It appears from the evidence that on the last-named day the plaintiff's intestate and his brother were passing southerly down Smith street, carrying loads upon their shoulders; that, when the deceased arrived at the crossing, his brother passed on across the tracks, and he set down his bag on the bumper of a car standing near and partly across the cross-walk, looked around, and then placed it on the other shoulder, and passed on, and, when he arrived at the next track of defendant's road, he was struck by the tender of an engine backing down from East Buffalo.   It also appears that it was snowing, and the wind was blowing from the south-west at the rate of from 40 to 45 miles an hour; that the crossing was one much used by the people on foot and with vehicles; that the defendant maintained a flagman at the crossing, and a flag shanty a few feet south of the tracks; that, at the time of the accident, the defendant's employes had run a string of freight-cars on the switch track crossing Smith street, and had cut an opening through, leaving the ends of the car close up to the sidewalk, and on the west side the end of the car projecting over the sidewalk.   The other facts in the case are controverted.

The plaintiff gave considerable evidence tending to show that no bell was rung or whistle blown; that the engine was going at a rate of speed variously stated by different witnesses from 10 to 20 miles an hour; that the flagman was in his shanty, and not at his post to warn people of approaching trains. The defendant's evidence tends to dispute some or all of these propositions. It is claimed by the defendant that the flagman was at his post at the crossing; that the bell was rung and the whistle sounded.   It is not disputed that the whistle sounded sharp, short toots at some time while crossing Smith street, the plaintiff claiming it was after the boy was struck, or so near before it that it was impossible for him to get out of the way, while some of the witnesses for the defendant say that the bell was rung all of the time, and the whistle sounded before the engine crossed Smith street.   In this condition of the case, with the facts touching the principal questions controverted, the defendant's counsel asked the court to take the case from the jury, and direct a verdict for the defendant.   I think the court very properly denied the request, and submitted the fact to the jury, under proper instructions.   It is so well settled by such a multitude of cases in the highest court of our state that disputed questions of fact must be left to the decision of the jury that but a single reference is deemed necessary.   Chief Judge RUGER, in writing the opinion of the court of appeals in *Parsons* v. *Railroad Co.*, reported in 113 N. Y. 364, 21 N. E. Rep. 145, states the law as maintained by the court as follows: "The question is whether the injured party, under all of the circumstances of the case, exercised that degree of care and caution which prudent persons of ordinary intelligence usually exercise under like circumstances. This rule must, in all cases except those marked by gross and inexcusable negligence, render the question involved one of fact for the jury."   The only theory on which the court would have been justified in directing a verdict is either that there was no evidence from which a different conclusion could be lawfully reached or that the boy was guilty of "gross and inexcusable negligence."   I do not think the facts of this case warrant any such conclusion, and the fact that the deceased was a boy of but 12 years of age had an important bearing upon the question of his contributory negligence, and the court properly submitted the question to the jury.   *Stone* v. *Railroad Co.*, 115 N. Y. 104, 21 N. E. Rep. 712.

The exceptions taken to the admission of evidence do not seem to be meritorious.   A witness was permitted to state under defendant's objection that "he [the flagman] walks lame."   It does not seem to have much bearing upon the question of the defendant's negligence one way or the other.   It was

probably called out for the purpose of corroborating the plaintiff's theory that the flagman was in his shanty, and not on duty. It does not seem to me to be objectionable to show the physical condition of the defendant's flagman, if it in any way interfered with the proper discharge of his duty, as bearing upon the negligence of the defendant. In any other view, it is wholly immaterial, and it is not apparent how the defendant was prejudiced by it. The defendant complains because the court did not charge in the language requested "that there is no evidence in the case that the plaintiff's intestate looked; no direct evidence in the case that the boy looked for the approaching train after he crossed the switch track." The court, in reply to the request, said: "I do not know. I will leave that to the jury to say,"—neither charging that there was or was not such evidence. Whether the court will, at the request of a party, read the evidence of a witness upon a given point, is in the discretion of the trial court, and if the court declines to do so, and submits the question to the jury, no error is committed. But the court could not have safely charged as requested by the defendant's counsel, as there was evidence from which the jury might find that the boy looked. The witness Miller says: "I saw a boy resting upon the draw-head with a bag. His eyes and all his movements were towards East Buffalo." This is the direction from which the engine was coming. Then again: "He looked towards East Buffalo. If he had his eyes open I could not swear to it, but his face was towards East Buffalo." Again, the same witness says: "He stood looking around facing towards East Buffalo." No other question is raised, and we do not think any error was committed. The charge presumably stated the rights of the parties correctly, and not unfavorably to the defendant, as no complaint is made, and as the smallness of the verdict would seem to indicate.

The judgment, therefore, should be affirmed, with costs.