MARIA A. O'HARRA, as Administratrix, etc., of CHARLES N. O'HARRA, Deceased, Respondent, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Personal injuries — sentinel guarding cars at the request of a railroad company — the company chargeable with notice of his presence — contributory negligence — newly-discovered evidence.*

A new trial will not be granted upon the ground of newly-discovered evidence, unless the new evidence is of such importance that it would probably overcome all the evidence given upon the trial inconsistent with that newly discovered.

In an action brought to recover damages resulting from injuries caused by the alleged negligence of the defendant, a railroad corporation, it appeared that, owing to a strike upon the defendant's road in and about Buffalo, the Governor called out the militia, and a company of which the deceased was a member reached the defendant's stock yards about eight o'clock on the morning of August seventeenth, and that about eleven o'clock the next morning, while the deceased was acting as sentinel and in obedience to his instructions was pacing a distance of about 200 feet, with a view to guarding the property of the defendant, he was struck by a train of cars and killed; that near the end of the beat given to the intestate there was a train, standing in what was apparently a "dead yard," which had not been moved in any way while the intestate was in the yard; that these cars extended from west to east, the easterly portion being upon a curve and the most easterly portion apparently not being discernible from the westerly portion nor from the beat occupied by

the intestate; that these cars were suddenly put in motion by an engine which was at the east end of the train pushing several cars down against the body of dead cars, and the movement thus occasioned caused the westerly end of the train to collide with the deceased, causing his death. There was evidence tending to show that no signal was given to indicate any movement of the cars.

*Held,* that, as the company had requested the presence and protection of the militia, it was chargeable with notice of the position of the intestate and of the possible danger that might arise from a sudden movement of the cars;

That it was for the jury to determine whether the defendant had exercised reasonable care in the management of its cars;

That the question whether the intestate was, under the peculiar circumstances of the case, guilty of contributory negligence, was one to be determined by the jury.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oswego on the 2d day of February, 1895, upon the verdict of a jury rendered after a trial at the Oswego Circuit, and also from an order bearing date the 16th day of January, 1895, and entered in said clerk's office, denying the defendant's motion for a new trial made upon the minutes, and also from an order made at the Onondaga Special Term, bearing date the 9th day of March, 1895, and entered in the office of the clerk of the county of Oswego, denying the defendant's motion for a new trial on the ground of newly-discovered evidence.

*Mullin, Griffin & Walker* and *C. G. Griffin,* for the appellant.

*C. N. Bulger* and *D. P. Morehouse,* for the respondent.

HARDIN, P. J.:

In August, 1892, there was a strike on the defendant's road, in the city of Buffalo and East Buffalo. It became so general and alarming that the defendant appealed to the Governor of the State to exercise his powers as commander of the militia, and he did so by calling out the militia of the State to the extent of some 8,000 men. The call that was communicated to the Forty-eighth Separate Company of Oswego reached there about twelve o'clock on the night of the sixteenth of August, and about three o'clock in the morning of the next day the company were placed in cars and transported

immediately to the scene of the trouble, and upon reaching the defendant's property some of the defendant's officers immediately communicated their desires to the officers of the Forty-eight Separate Company in respect to the directions to be observed in order to carry out the efforts to protect the property of the defendant. Defendant's property was in the hands of riotous strikers and a mob spirit prevailed, and its property was in great danger of disaster and destruction. After the officers of the Forty-eighth Separate Company had received information and instructions from the officers and managers of the defendant's affairs they proceeded to deploy their men in and about the stock yard of the defendant, in East Buffalo, where there were numerous tracks and side tracks, besides the main tracks of the defendant. Plaintiff's intestate was called upon to act as sentinel in guarding a certain portion of the yard. He was a young man, about twenty-one years of age, and apparently obedient to the instructions of his military superiors, and in the discharge of his duty, after receiving such instructions, he was engaged in pacing a distance of about 200 feet, in uniform, attempting to guard the property of the defendant against depredations, either from the strikers or evil-disposed riotous persons, and while engaged in the discharge of his duty, in obedience to the instructions of his commanding officers, he received the injuries which resulted in his death. There was a train of some twenty-five cars standing in the yard, near the end of the beat given to the intestate, and they had not been moved in any way by the defendant during the time the intestate had been in the yard. The arrival of the Forty-eighth Separate Company was at eight o'clock on the morning of the seventeenth. The injuries resulting in the intestate's death were received about eleven o'clock in the morning of the eighteenth of August. Considerable evidence was offered tending to show that the yard was apparently a " dead yard," or to show that there had been no movement of this train of cars, and that, judging from the fact that no movement had been made of them, it was not reasonable to apprehend a sudden change of operations on the part of the defendant. The twenty-five cars extended from west to east and the easterly portion seemed to be upon a curve, and the most easterly portion apparently was not discernible from the westerly portion or from the beat occupied by the intestate. They were suddenly put in motion by an

engine which was at the east end of the train pushing several cars down against the body of dead cars and suddenly moving the whole line westerly, and apparently the movement thus occasioned caused the westerly end of the cars to collide with the deceased and to cause the injuries to him which he received on that occasion resulting in death in about an hour after he was struck.   After reading the evidence presented in the appeal book, we are of the opinion that the question of whether the defendant exercised towards the intestate ordinary care and precaution, whether its omission to give timely and due warning of the movement of the cars, or in some way to apprise the intestate that the cars were to be set in motion, was a question of fact for the jury.   In considering this question it was very proper for the jury to bear in mind that the soldiers were invited by the defendant to come to its aid when its property was in peril and when its business was interrupted, and that, at the instance of the defendant, the soldiers were placed in the yards and were instructed in a general way to look out for all depredations and depredators, and that, under the circumstances of the case, the railroad was called upon to treat the soldiers with care and prudence. There was evidence tending to show that no bell was rung or whistle sounded or alarm given which could in any way call the attention of the deceased to the disposition of the defendant to suddenly change its course in respect to the dead cars standing near the termination of the intestate's beat.   The defendant was chargeable with notice of the position occupied by the intestate, and of the possible dangers that might arise from a sudden change of its action by causing its cars, without warning of any kind, to be put in motion.   The question, therefore, was for the jury to determine whether such reasonable precaution in their management as ordinary prudence dictates to protect the intestate was given.   (*Hollender* v. *N. Y. C. & H. R. R. R. Co.*, 19 Abb. N. C. 18; *Young* v. *N. Y. C. & H. R. R. R. Co.*, 13 Daly, 294; S. C. affd., 103 N. Y. 678.)

It is contended in behalf of the appellant that the intestate was chargeable with contributory negligence.   After all the facts and circumstances surrounding the situation of the deceased at the time of receiving the injuries are considered, a reasonable deduction therefrom seems to be that it was a question so circumstanced that

the question of whether he was guilty of negligence or not, was one which should have been, and was properly submitted to the jury. (*Parsons* v. *N. Y. C. R. R. Co.*, 113 N. Y. 355.) We think the facts of the case before us differ quite essentially from the pivotal facts disclosed in *Van Schaick* v. *The Hudson River R. R. Co.* (43 N. Y. 527). In that case it did not appear that Van Schaick had any such assurances from the lapse of time, as the deceased in the case now before us had, as to the stationary condition of the cars which he was passing. The instructions of the trial judge were quite reasonable upon the question of the intestate's freedom from negligence on the occasion of his receiving the injuries. We see no error in the course of the trial which requires us to interfere with the verdict of the jury.

(2) A motion was made for a new trial on newly-discovered evidence based upon the affidavits of Cottle and Harlach. Some of the facts which are stated in the affidavits are upon subjects upon which testimony was given, and can, at most, be said to be conflicting with some of the evidence found in the progress of the trial. Under the rule, which is to the effect that the new evidence must be of such importance that it would probably overcome all the evidence given upon the trial inconsistent with that newly discovered, we think the trial judge committed no error in refusing to grant a new trial. (*Adams* v. *Bush,* 2 Abb. [N. S.] 104 ; *Geneva, Ithaca & Sayre R. R. Co.* v. *Sage,* 35 Hun, 95.)

The trial judge saw the witnesses during the progress of the trial, and was called upon to judge as to whether or no, in his opinion, the affidavits furnished indication of such evidence that, if considered in connection with that given upon the trial, would lead to a different result, and his judgment, and, therefore, his decision in the premises was that the alleged newly-discovered evidence would not produce a change of result.

We are not persuaded that he committed any error in that regard. We are of the opinion that the judgment and orders should be affirmed, with costs.

MARTIN and MERWIN, JJ., concurred.

Judgment and orders affirmed, with costs.