at the fifth floor, and which was a signal to him to slow down the engine, so that, when the mark on the rope for the sixth floor arrived, he could shut off the power. He failed to see the first mark, but, upon seeing the second, slowed down, instead of stopping the engine, thinking that he had arrived only at the fifth floor. He was a co-employé of the intestate, and was negligent in his duty as such. He was not negligent in performing any duty of superintendence. Second. Plaintiff's intestate failed to ring the bell which was the signal to notify the engineer that the elevator had arrived at the sixth floor. That duty rested upon him, and he had been performing it for some time previous. No other person present was charged with that duty. The falling of the elevator, therefore, resulted primarily from his negligence. The defendant has not been shown negligent, and the plaintiff's intestate was not shown free from contributory negligence.

---

## MILLER v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. February 28, 1908.)

**1. CARRIERS—STREET RAILWAYS—STATUS AS "PASSENGER" NOT LOST.**

Where a passenger on a crowded street car alighted from the front platform at a transfer point to go to the rear platform, where the conductor was standing, to procure a transfer, he did not lose his status as a passenger, defeating recovery from the company for an assault by the motorman and the conductor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 992, 993.

For other definitions, see Words and Phrases, vol. 6, pp. 5218–5227; vol. 8, p. 7748.]

**2. SAME—ASSAULT ON PASSENGER—LIABILITY.**

In an action against a street railway company for assault by its employés upon a passenger, who alighted from the front platform of a crowded car at a transfer point and walked to the rear platform to procure a transfer, the company may not defeat recovery because the passenger fails to show that the company operated the car to which he desired a transfer, on the theory that he ceased to be a passenger when he alighted, since he was entitled to be carried to the end of the line, or so far in that direction as he saw fit to remain on the car, and the company became an absolute guarantor of his safety against unjustifiable assault by its employés while the control of carriage was in force, and since, if the conductor had refused a transfer, the passenger could have remained on the car and continued his ride to the end of the line.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1121, 1123.]

Appeal from Municipal Court, Borough of Brooklyn, Third District.

Action by Albert Miller, an infant, by Aaron Miller, his guardian ad litem, against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

F. R. Stoddard, Jr., for appellant.

Louis B. Brodsky, for respondent.

RICH, J. This is an action brought to recover damages for the breach of an alleged contract to carry the plaintiff over its line safely and without insult or assault by its employés. On June 16, 1907, the plaintiff, with six companions, boarded one of defendant's cars, operated through Lorimer street, in the borough of Brooklyn, intending to remain thereon until the car reached Broadway, and there transfer to a line operated through that street to their destination. The car was crowded, and plaintiff and his companions stood on the front platform. When the conductor reached them, one of the party, Gerhardt, paid him seven fares for the persons in his party, including plaintiff, and demanded transfers. From the plaintiff's testimony it is inferable that there seems to have been some doubt in the mind of the conductor as to whether it was his duty to give the transfers. He said that when the car reached Broadway he would see an inspector, and if the inspector told him to give the transfers he would do so. When the car reached that point and stopped, plaintiff alighted from the front platform, passed to the rear of the car, stepped upon the rear platform, where the conductor was standing, and demanded a transfer. At that time a stranger was engaged in an altercation with the conductor regarding a transfer, and was holding the bell cord. As the plaintiff made his demand the conductor began to strike the persons within his reach, and among others struck the plaintiff in the face, and the motorman of the car struck plaintiff on the head with the controller. The appellant contends that by alighting from the car the plaintiff ceased to be its passenger, the contract of carriage was terminated, and for the assault thereafter committed by its employés it is not liable.

The evidence was sufficient to warrant the jury in finding that the attempt made by the plaintiff to procure a transfer when the car stopped at the corner of Broadway was pursuant to the promise of the conductor that when the car reached that point he would see an inspector, and, if told by him to give the transfers, he would do so. By stepping off the front platform of the car for the purpose of going to the place in the car where the conductor was standing, the plaintiff did not lose his status as a passenger. The car being crowded, he was not bound to force his way inside the car to reach the rear platform, but had the right to step off the car for that purpose, and in so doing lost none of his rights as a passenger. Parsons v. N. Y. C. & H. R. R. R. Co., 113 N. Y. 355, 362, 21 N. E. 145, 3 L. R. A. 683, 10 Am. St. Rep. 450; Zeccardi v. Yonkers Railroad Co., 190 N. Y. 389, 83 N. E. 31.

It is further contended that because of the absence of any allegation in the complaint, or evidence upon the trial, that the defendant operated the Broadway car to which plaintiff desired to transfer, it had fully performed its contract of carriage when it had conveyed the plaintiff to the point on its line where he would have to leave the car on which he was riding to take the Broadway car; that in his boarding the car after he had alighted therefrom he was a trespasser. The plaintiff became a passenger of the defendant when his fare was paid, and was entitled to be carried to the end of its line, or so far in that direction as he saw fit to remain on the car, and the defendant became and was an absolute guarantor of his safety against the unjustifiable assault of its employés while such contract of carriage was in force.

108 N.Y.S.—61

This contract, and the consequent duties of the defendant to the plaintiff under it, had not terminated when the car reached the corner of Broadway. If at that point the conductor had refused to give the transfer, it was yet the right of the plaintiff to remain upon the car and continue his ride to the termination of the road. The assault being committed while the contract of carriage was in force, the defendant was liable therefor. Stewart v. Brooklyn & Crosstown R. R. Co., 90 N. Y. 588, 43 Am. Rep. 185; Zeccardi v. Yonkers Railroad Co., supra.

The judgment must be affirmed, with costs. All concur.