strument, the waters of Glen Brook, or the north spring, feeding the waters of Glen Brook, seems to give significance to all the language used by the grantor in the instrument. The expression "waters of Kirkland Glen Brook" is descriptive of one brook only; and it is a familiar rule that a conveyance should be so construed as to give force and effect to all the language used; and the other rule is equally clear "that nothing will pass by a deed except what is described in it, whatever the intention of the parties may have been." Thayer v. Finton, 108 N. Y. 397, 15 N. E. 615. In Coleman v. Improvement Co., 94 N. Y. 232, it was said, viz.: "Nothing passes by a deed except what is described in it, whatever the intention of the parties may have been." Upon a careful inspection of the instrument, and of all the evidence before the referee, it seems that he would have been warranted in reaching the conclusion that the waters of the south spring were not granted to the defendant by the instrument which the plaintiff executed. The language used by the learned referee seems to have been somewhat restrictive when he says: "Upon the evidence given upon the trial I find and decide that the plaintiff has failed to make out and maintain his alleged grounds and causes of action, or either of them, and that his complaint should be dismissed." He does not find specifically, as a matter of law, just what was covered by the instrument executed by the plaintiff. Perhaps, however, that is necessarily inferred from his deciding to dismiss the complaint. However that may be, I am inclined, for the reasons intimated above, to favor a reversal and a new trial.

Judgment reversed, and a new trial ordered, with costs to abide the event. All concur.

---

(8 App. Div. 479)

### WARFIELD v. NEW YORK, L. E. & W. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

CARRIERS—INJURY TO PASSENGER CROSSING TRACK AT STATION.

    The rule requiring a person before crossing a railroad at a highway to stop and look and listen for approaching trains does not apply to persons who are crossing the track on a walk at a station, for the purpose of boarding a train.

Appeal from circuit court, Steuben county.

Action by Abby Warfield, as administratrix of Chester Warfield, against the New York, Lake Erie & Western Railroad Company, to recover damages for the alleged negligent killing of plaintiff's intestate. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on a case and exceptions, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

James H. Stevens, for appellant.
Randolph Horton, for respondent.

FOLLETT, J. This action was begun October 5, 1894, to recover damages for the alleged negligent killing of the plaintiff's husband by the defendant. October 5, 1892, the plaintiff's intestate was run over and killed by one of defendant's cars at its passenger station at the village of Addison. Defendant's double-track railroad extends easterly and westerly through the village of Addison, having its two main tracks on the south side of the passenger station. On the north side of that station, and about 280 feet east of it, a track called a "lead track" or "cross over" branches from the most northerly of the two main tracks, and diverges northerly therefrom, and crosses a gravel walk at a point about 150 feet west of Tuscarora street, which is also about the same distance from the passenger station. This lead track or cross over connects the main track east of the station building with a side track known in this case as the "platform switch." Another side track, called in this case the "hill switch," diverges from the platform switch. These two side tracks are connected with the main tracks at a point about six or seven hundred feet west of the station. Tuscarora street extends northerly and southerly through the village, crossing the defendant's main tracks at a point about 300 feet east of its passenger station. The Eagle Hotel is on the west side of Tuscarora street, and a few rods north of the railroad. On the west side of this street there is a sidewalk which crosses the railroad. For 30 years the defendant has maintained a gravel walk extending westerly from the Tuscarora street sidewalk along the north side of the main tracks of the railroad, for the convenience of persons going to and from the passenger station. This gravel walk is crossed by the lead track or cross over at a point about midway between Tuscarora street and the passenger station. The plaintiff's intestate left the Eagle Hotel for the purpose of taking train No. 29, which arrived at that station at 10:20 a. m. To reach the station, it was necessary for him to pass over this gravel walk lying on the north side of defendant's main tracks, and crossing the lead track at a point about 150 feet west of Tuscarora street, and 150 feet east of the passenger station, as before stated. While he was in the act of crossing the lead track, he was struck by a freight car which was being backed westerly on that track. An east-bound way-freight train, No. 96, arrived at that station at about 9:45 a. m. It became necessary for this train to place a gondola car on the hill switch. Part of the freight train was backed from the main track westerly onto the lead track far enough so that the gondola could be shoved or "kicked" onto the most northerly of the side tracks,— the hill switch. After doing this, the train was to go onto the platform switch for the purpose of attaching some cars to it. The witnesses sworn in behalf of the plaintiff testified that, after the gondola had been left on the hill switch, the train moved eastwardly on the lead track, the locomotive being at the east end of the train, then stopped, and again backed westwardly on the lead track, for the purpose of entering on the platform switch, and ran over and killed the plaintiff's intestate. The defendant's theory was, and the witnesses called by it testified, that there was no eastward

movement of the train after the gondola was detached from it, at some point east of the place where the gravel walk crossed the lead track. This was the only question of fact presented on the trial.

The learned trial judge, in submitting this question to the jury, said:

"The witnesses for the plaintiff who testified upon that subject say that they were standing at the end of the lawn, between the easterly end of the railroad station building and the west side of the lawn; that they were a hundred or so feet from the place where the switches cross the walk; that they saw Warfield coming along the walk; that he was coming towards them, going west; that at that time this portion of the train which was being switched was on the northerly main track, and was going to the east away from Warfield. That, they say, was the condition of affairs when Warfield turned from Tuscarora street to go west towards the station. If that was the condition of affairs, of course the impression that would have been conveyed to Warfield's mind, if he saw that in that way, was that this train was going away from him, and there was no special danger to be apprehended from it. That must necessarily be the fair inference, if you find that was the fact. They say that Warfield continued to the west, and this train changed its direction, and came up behind him; and before he had any notice, without any signal being given (there is no claim that any signal was given of any kind whatever, except as I shall call to your attention in a moment), he was struck by the car, and knocked down and killed."

The learned judge then called attention to the testimony of the defendant's employés on the train, which was to the effect that the train did not move forward to the east after it left the gondola on the switch. This question of fact was fairly submitted to the jury, under instructions which, so far as this issue is concerned, were not excepted to, and was found for the plaintiff. It is conceded that there was no person at or near the point where this gravel walk crossed the lead track whose duty it was to give notice to persons of the approach of trains. No bell was sounded nor whistle blown giving notice of the approach of this train. No employé was stationed on the rear end of this train to give notice to persons of its approach. Under these circumstances, the issue of fact having been found in favor of the plaintiff, the evidence justified the conclusion of the jury that the defendant was negligent in the management of this train, and that, by reason of such negligence, the plaintiff's intestate was killed.

The learned counsel for the defendant insists that the evidence does not show that the plaintiff's intestate did not, by his own negligence, contribute to the accident. The witnesses who saw the decedent approaching the station testified that they did not see him look to the east or to the west for the approach of trains, but that he traveled on this gravel walk westerly towards the passenger station, looking straight ahead. The rule which requires a traveler on a highway which crosses a railroad to look and listen for approaching trains is not applicable to persons who are crossing a track on a walk of the railroad at a station, for the purpose of going to the station to become a passenger. Terry v. Jewett, 78 N. Y. 338; Brassell v. Railroad Co., 84 N. Y. 241; Thomas, Neg. 243 et seq.

At the close of the evidence, the defendant's counsel moved for a nonsuit, on the grounds that the plaintiff had failed to prove facts sufficient to constitute a cause of action, that the evidence was insufficient to justify the jury in finding that the defendant was negligent, that the decedent was not shown free from contributory negligence, and that the evidence showed that he contributed by his own negligence to the accident. The motion was denied, and the defendant excepted, which was the only exception discussed by the learned counsel for the appellant on this appeal. No exception was taken to the charge, except to the submission of the question whether the decedent was free from contributory negligence. In submitting the question of the contributory negligence of the decedent, the jury were instructed that, in the situation in which he was placed, he was not bound, as a matter of law, to look and listen for the approach of trains, but whether he was negligent under all the circumstances was a question of fact for them to determine.

I think the evidence justified the submission of the case to the jury, and that the judgment and order should be affirmed, with costs. All concur.