Proceeding referred to Herbert T. Ketcham, Esq., to take proof as to the circumstances attending the conviction of the respondent, and as to his subsequent conduct, and report the same to this court, with the opinion of said referee thereon.

(35 App. Div. 292.)

## BEECHER v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. December 6, 1898.)

CARRIERS—INJURIES TO PASSENGERS—CONTRIBUTORY NEGLIGENCE—EVIDENCE— SUFFICIENCY.

> Deceased had frequently crossed a track to take a train at an early hour on a second track. One cold morning, when it was not yet light, he hurried from the station after the gates were opened, and was struck by the train coming on the first track. There was a headlight on the engine and a bell was rung. He did not look before attempting to cross. A passenger behind him barely escaped, and others were stopped by the interposition of the train. The gateman announced the coming of the train, but did not announce that it was on the first track. A switchman testified that the train had not come in on the first track before the accident for 13 years, but a passenger thought it had done so once or twice about 2 months prior thereto. *Held* a question for the jury whether deceased was guilty of contributory negligence.

> Goodrich, P. J., and Cullen, J., dissenting.

Appeal from trial term, Queens county.

Action by Anna M. Beecher, executrix, against the Long Island Railroad Company. Judgment for defendant, and plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Augustus N. Weller, for appellant.

William J. Kelly, for respondent.

HATCH, J. This case, upon its facts, presents the single question whether the deceased, in the exercise of reasonable care, was bound to take some measure of precaution, by looking and listening, before he attempted to cross the track upon the walk which carried him to the platform where he usually took the train that ran him down, or whether he might rely upon an assurance of safety, by reason of the conditions which the defendant had created, and which had uniformly been acted upon prior to the accident. The evidence warranted the jury in drawing an inference that the defendant was guilty of negligence in operating the train over the track where the deceased was injured. His contributory negligence, therefore, is the only question. Upon the evidence the jury were authorized to find that the usual place where the deceased took this train—indeed, there is no evidence that he ever took it at any other place—was from the south platform, upon the south track. The testimony of the switchman authorized the jury to find that this train had been run in upon this south track for a period of 12 or 13 years. During this time, he says, he had never known it to run upon the north track, except upon the morning of the accident. One passenger thought it had come in once or twice upon

the north track in about two months before the accident. An examination of the testimony of this witness shows that his recollection upon this subject is quite vague. There is nothing to indicate that the deceased had ever taken it from the north track. As I view the case, therefore, the jury were authorized to find that it was the uniform custom for the defendant, in the operation of this train, to run it on the south track, by the side of the south platform, and that the passengers came from the station upon the north side, crossed the north track in a space planked by the defendant for the purpose of furnishing a walk, and so reached the south platform and boarded the train. There is no claim that any other train was run upon the north track, or upon any other track, at the time when this train was switched in, and when it left the depot. It is stated that many trains run upon all of these tracks during the day, but it is not stated, nor was it claimed, that any other train ran into this station at the time when the Brooklyn train came in and left the station. We are to consider this case, therefore, as presenting this condition: The uniform custom, established for many years, in the running of this train, was for the train to switch in upon the south track. The station master announced its approach to the passengers in the station. The passengers came therefrom, crossed the station platform about 14 feet, then over the plank walk across the north track, and took the train. This was the uniform custom, except possibly once or twice, when this train ran in upon the north track. At other times no train had run there at this hour. Under these circumstances, was the deceased justified in acting upon the assumption that it was safe for him to travel over this space without looking and listening for trains thereon? I think the jury might say that he was, and that it cannot be affirmed, as matter of law, that he was guilty of contributory negligence in so acting. The care which a person is called upon to exercise is always relative, having regard to the danger to be encountered, and the circumstances by which the person is surrounded. What should be the act of a person exercising reasonable care under given circumstances is the test, and is usually a question of fact. What a great many persons do under the same circumstances is fairly for the jury to consider in characterizing the act. Upon this morning, when this accident happened, it was not yet light, and was very cold. The passengers were assembled in the waiting room to take this train, which was two or three minutes late. The station master opened the station door, and announced the train. The notice was the usual notice. There was no warning that the train was upon the north track, which the passengers uniformly crossed. The deceased left the station in the lead, and it is evident that the natural impulse was, as contact with the cold was had, to seek shelter in the car as quickly as possible. The deceased passed over the usual way. The other passengers followed at his heels. He reached about the center of the track, and was struck. Another passenger, following, barely escaped, and others were close when the train interposed. It is true that some saw the train, but it is also clear that some would have walked over the same space at the deceased did, had not the train interposed. If a number ʳsons, possessed of the same information which the deceased

had of the surroundings, acted in a manner similar to his act, under the same circumstances, it would seem to authorize an inference of the exercise of prudence and care commensurate with the supposed surroundings, upon which the deceased had the right to rely. What was there to induce a belief that the train was upon the north track? It had rarely, if ever, been there before. The defendant gave no notice of any change. It had created the custom which lulled the deceased and the other passengers into a sense of security, and it also created the condition which ran this train over the track, when it knew the passengers were in the habit of crossing with a sense of security. Having created both conditions, the defendant cannot in reason ask for the enforcement of any very strict act of circumspection on the part of the persons it invited into this environment.

It is said that the headlight was lit, that the bell was rung, and the train made a noise. The evidence may satisfy the claim, or the reverse. One passenger said the headlight burned brightly, but he could not recollect that the bell rung. The other did not recollect that the lamp was lighted, but did recollect that the bell rung. Suppose either or both or all these conditions existed; were they calculated to arrest the attention of the deceased, and ought he to have seen them, or looked for them? If the train had run in upon its usual track, it would make a noise, the bell could be heard, and the light seen. These tracks were in close proximity, and all of the usual appliances for warning of the approach of the train would be as full and complete upon the one track as the other. It is not to be assumed that the train was always at the platform, at rest, when the passengers left the station to reach it. On the contrary, it is fair to assume that the train was announced while running into the station, and that it was, or might well be, in motion when the passengers left the station. There would be as much noise then as there was at the time in question, and it would come from practically the same direction, and be of the same character. It would seem that a jury would be authorized to say that there was nothing in all of these surroundings, assuming them all to have existed, which would tend to arrest the attention of a passenger by reason of the train being upon the north, rather than upon the south, track. I am unable to see any difference in principle between a case where a train upon another track is run through passengers crossing the track to take a train, and the circumstances surrounding this case. In both there is the invitation to act in a certain manner, and follow a usual course, for the purpose of transportation; and in both the danger was from an unexpected source, easily discoverable by the use of the faculties of hearing and seeing, but whose existence, I think, neither had reason to expect. In the former case, while the intending passenger must exercise reasonable care, yet, where the conditions are of the defendant's creation, it authorizes the assumption that it will not expose the passenger to unnecessary danger; and this assumption may be considered as naturally tending to diminish care and watchfulness, and thus furnish a case where the jury alone are qualified to characterize the act. Terry v. Jewett, 78 N. Y. 338; Brassell v. Railroad Co., 84 N. Y. 241. In the present case it would seem that the same reasons exist for the application of

the same rule. "In general, it may be imprudent to enter upon a track while a locomotive is approaching. Whether it is so in a particular case must depend upon the circumstances under which the attempt to cross is made. And where, though in fact it may be hazardous, a traveler does so in consequence of the acts of the defendant, he cannot be charged with negligence, unless the risk or danger was apparent." Palmer v. Railroad Co., 112 N. Y. 234, 244, 19 N. E. 681. "The question is whether the injured party, under all of the circumstances of the case, exercised that degree of care and caution which prudent persons of ordinary intelligence usually exercise under like circumstances. This rule must in all cases, except those marked by gross and inexcusable negligence, render the question involved one of fact for the jury." Parsons v. Railroad Co., 113 N. Y. 355, 364, 21 N. E. 147. "The rule which requires a traveler on a highway which crosses a railroad to look and listen for approaching trains is not applicable to persons who are crossing a track on a walk of the railroad at a station for the purpose of going to the station to become passengers." Warfield v. Railroad Co., 8 App. Div. 479, 40 N. Y. Supp. 783. Within these authorities, I think that this case presented a question of fact for the jury, and that it was error to dismiss the complaint.

Much stress is laid upon the fact that it was conceded that the passengers who looked could determine that the train was approaching upon the north track. Why this concession should have been made by the plaintiff is one of the incomprehensible things in this case. It does not need much consideration of the circumstances, the relation of the tracks to each other, and the impaired light, to see that it may have been quite difficult to so determine, until the train was very close. One witness testified that he could tell, and another testified that he could not. Then followed the admission. Giving to this admission the full force claimed for it, I do not think it changes the question. If the deceased was lulled into a sense of security by the custom which the defendant had established,—and I think the evidence would authorize such a finding,—then I think he might assume that the defendant would not change the condition, and run a train over him. In the absence of notice of the change, I think he might rely upon a continuance of the custom, and that the defendant could make no departure therefrom without notice, except at its peril. Whether the deceased exercised reasonable care became a question for the jury.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur, except GOODRICH, P. J., and CULLEN, J., dissenting.

CULLEN, J. (dissenting). The plaintiff's testator was struck by a train in front of the defendant's station at Jamaica, and received injuries from which he died the following day. At this place there are a number of tracks, the lines from Long Island City and Brooklyn meeting here. It is sufficient to say, in relation to the situation of the tracks and the crossings, and the movements of trains at this station, that the two northerly tracks were used for west-bound trains. The more northerly of the two, and the one immediately in front of the station building, which was situated to the north of all the tracks,

was used for trains destined for Long Island City, while the other was generally used for trains going to Brooklyn. These two tracks were separated from the other tracks by a fence. Between the first and the second track from the station building, or Brooklyn track, was a platform, used by passengers alighting from or entering the trains. In January, 1897, about 6 o'clock in the morning, the deceased was in the waiting room of the station, intending to take the 6:04 Rapid-Transit train to Brooklyn. On the approach of the train, the door-man of the station announced its appearance, and the passengers proceeded to the platform. The deceased stepped down from the platform onto the near track, when he was struck by the engine, and received the injuries already detailed. The train came to a stop about 50 feet from the point where the deceased was struck. Two eyewitnesses of the occurrence were produced on the trial. One of these testified that the headlight was burning brightly, but could not remember about the ringing of the bell. The other had no recollection of the headlight, but testified that he heard the bell rung. The morning (or night, rather) was clear and cold. There was no other train at the station. Both of these witnesses, on coming out of the station building, saw the train approaching. One of them testified that, without turning his head, but looking in front of him, his natural line of vision would extend 120 feet up the track. The other said 50 feet, while, if the head was turned in that direction, an unobstructed view of over 600 feet could be obtained. While one of the witnesses was being examined as to the approach of the train, the plaintiff's counsel made this admission: "We will admit it was on the north track, and that these men, when they saw it, could tell it was on the north track." It appeared that usually this train came in on the southerly of these two tracks, it having within the previous couple of months come in on the northerly or near track only once or twice. The occasion of its position on this morning was the mistake or error of a switchman further up the line. The engine that drew the train was running backward; that is to say, the tank in front of the engine, though on the tank there was a headlight. On this proof the trial court dismissed the complaint on the ground of the contributory negligence of the plaintiff's testator. We think the disposition of the trial court was correct. It is undoubtedly true that the deceased was entitled to a reasonably safe passage from the waiting room to the train which he intended to take; and it is also true that the rule which requires travelers on the highway, before crossing a railroad track, to look and listen for the approach of a train, does not apply to a passenger proceeding in a railroad station to enter upon or alight from a train. Terry v. Jewett, 78 N. Y. 338; Brassell v. Railroad Co., 84 N. Y. 241; Parsons v. Railroad Co., 113 N. Y. 355, 21 N. E. 145. It would be gross negligence to run a train across the line of movement of a throng of passengers to or from another train already at rest in a station, and a passenger is not required to contemplate such an occurrence, or be on his guard against it. But the circumstances of the present action are entirely different from those suggested. A passenger, on seeking to board a train, or moving through a station, is bound to use reasonable care and diligence for his own protection. He must use his senses to dis-

cover the situation that is presented to him; to see where his train is, and what is the proper or natural way of going to it. Except at the terminus of a road, or at great stations in large cities, it is the common custom for passengers to await on the platform the approach of the train some appreciable time before the train has actually stopped. When the deceased left the waiting room and came out onto the platform, certainly he must or should have seen that the train had not yet reached a stop, and was not yet presented to him for entrance. His hearing must also have told him of the movement of the train. The train came to a full stop about 50 feet from the place where the plaintiff's testator was struck. It is plain, therefore, that at the time he was struck the train must have been moving very slowly, and that when he stepped from the platform onto the near track the engine could not have been many feet away. No other trains were present, and there was nothing in the surroundings to distract the attention of the deceased. The notice that he received from the doorkeeper was a warning of the approach of the train. That the deceased should have heard and seen the train coming is clear, and he undoubtedly knew of its approach. The admission of the plaintiff, already recited, is to the effect that, if the deceased had looked at the approaching train, he would have discovered that it was on the near or first track. The probability is that the deceased, being familiar with the general custom that the Rapid-Transit train would take the second track, relied on this assumption, and neglected to observe on which track the train was moving. The only question, then, presented in this case, is whether reliance on this custom excused the deceased from taking any pains to observe the movement of the train. We think not. That the custom was not an invariable one was proved by the testimony of plaintiff's witnesses. Either track was properly adapted for the use of the train, and, except for the previous custom, there was nothing to suggest to the passenger that the train would be presented for entrance on one track rather than on the other. It is the common custom in this country, on a double-track railroad, for trains to proceed on the right-hand track, but trains are at times moved in a reverse direction. The possibility that trains may move on a track in either direction is one that must always be contemplated by a person getting upon the track, except when the circumstances are such that he has the right to believe that no train would be moved thereon at all, as in the case already suggested, of his crossing tracks to reach a train at rest. In our opinion, the least care on the part of the deceased would have warned him of his danger, and enabled him to avoid it. The failure to take this care was, as a matter of law, negligence which should prevent a recovery.

The judgment appealed from should be affirmed, with costs.

GOODRICH, P. J., concurs.