(107 App. Div. 341.)

### CRANCH v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. August 31, 1905.)

1. RAILROADS—INJURIES TO PERSON ON TRACK—RIGHT OF PERSON INTENDING TO BOARD TRAIN.

A person, crossing at grade the tracks of a street surface railroad company to reach a station to take a train, need not exercise the care of a traveler on a highway crossing or a trespasser; but he is warranted in concluding that he will not be put in jeopardy by an approaching train accustomed to stop at the station before reaching the crossing.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 1365; vol. 41, Cent. Dig. Railroads, §§ 891, 1080-1082, 1189.]

2. SAME—CUSTOM OF COMPANY—PERSON'S RELIANCE THEREON—EVIDENCE OF CONTRIBUTORY NEGLIGENCE.

Where it was the uniform custom of all trains to stop before coming to a certain point, a person crossing the track at that point is justified in assuming that a train passing the point with unabated speed will give warning of such a course, and the omission to give any warning may be considered on the question of his negligence in attempting to cross.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 1365; vol. 41, Cent. Dig. Railroads, §§ 891, 1080-1082, 1189.]

3. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.

Evidence, in an action against a street surface railroad company for injuries sustained by a pedestrian crossing its tracks to reach a station to take a train, held to warrant a finding that the trains in stopping at the station never reached the point of crossing, thereby warranting a finding of freedom from contributory negligence.

Woodward, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Ruth Cranch against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

The following is the opinion of Kelly, J., on motion for new trial:

In this case the plaintiff was injured in a collision with a train of cars at a grade crossing on a highway with the defendant's double-track steam railroad. The railroad in question is on a private right of way, formerly used by a steam railroad; the train in the accident being operated by electricity. The tracks were substantially north and south. The highway runs east and west. The defendant maintained a station adjoining the highway on the south, with platforms extending along the outside of the north and south bound tracks. The plaintiff, with her husband, came up to the crossing on the highway from the west, intending to take a north-bound train which was scheduled to leave the station in question at 10:53 a. m. She and her husband had taken this train before. It was a regular train, running on a time-table and stopping at various stations along the line. As they approached the crossing, a south-bound train passed over the highway and came to a stop at the station platform to the south of the street. The plaintiff looked down to the south as the south-bound train was passing, and saw a north-bound train approaching several blocks distant. The regular trains at this time of day ran at half-hour intervals, and the plaintiff believed that the approaching north-

bound train was the train which she desired to take and which she supposed
would stop at the station before crossing the highway. She proceeded be-
hind the south-bound train then stationary; her husband preceding her, as he
testified, with the intention of holding the north-bound train at the station
until she reached it. The plaintiff says that on passing out from behind the
stationary south-bound train she looked again, and saw the north-bound train
still coming on, and apparently entering the south end of the station. The
space between the two tracks was about six feet in width. She proceeded, and
was struck by the north-bound train on the crossing. The north-bound train
was not the train which she intended to take, but was an extra train not
scheduled, making no stops and running at a speed of 12 miles an hour on its
way to lay up at the defendant's yard. The plaintiff's husband testified that
he saw the train; that he supposed it was the train which he desired to
board; that as the train came through the station he discovered that it was
not coming to a stop, threw up his hands to warn the plaintiff, but the acci-
dent occurred almost at the same instant. The plaintiff, her husband, and a
number of witnesses, passengers and residents in the vicinity, testified that
north-bound trains never passed over the highway without coming to a stop
at the station. There was evidence that no whistle or bell was sounded on
the north-bound train. There was no flagman or other warning at the cross-
ing. The defendant gave evidence from the motorman in charge of the train
that the train in question sounded a whistle before it entered the station;
that the plaintiff and her husband appeared suddenly in front of the train,
coming from behind the other cars, when it was too late to avoid the accident.
The motorman, a conductor, and a police officer testified that this identical
train ran every day across this street without stopping at the station, as did
other trains on the way to lay up in the yards. The plaintiff was injured
so that, as she claims, she has permanently lost power in her right arm and
hand, two of her ribs were broken, her nose was broken, her lower jaw was
broken or injured so that she lost all her teeth, and there was some injury
to her kidney and some permanent disfigurement. On a submission of the
question of defendant's negligence and plaintiff's contributory negligence to
the jury she has recovered a verdict of $12,500.

I think there was evidence here which required the submission of the
question of defendant's negligence to the jury. The evidence on the lack of
whistles, bells, or other notification that the train intended to cross the high-
way was for the jury. The obligation of the defendant was to give reason-
able notice of the approach of the train and of its intention to run the train
over the highway. Vandewater v. N. Y. & N. E. R. R. Co., 135 N. Y. 583, 32
N. E. 636, 18 L. R. A. 771; Richardson v. N. Y. C. & H. R. R. Co., 45 N. Y.
846. It is true that, notwithstanding the absence of signals, the plaintiff saw
the train; but, as I read the decision, this does not authorize the court
to say, as a matter of law on the facts here, that this was sufficient warning
of the defendant's intention to run the train across the street without a stop.
I think this was a question for the jury.

The important question is whether the plaintiff was entitled to have the
jury pass on the question whether she was free from contributory negligence.
This case was tried and submitted to the jury on the theory that the rules
applicable to steam railroad crossings at grade governed its disposition. The
railroad train had the right of way, subject to the defendant's obligation to
give reasonable notice of its intention to cross the highway. On the other
hand, this plaintiff was obliged to look and listen, and exercise her faculties
to avoid danger. She could not take chances. The plaintiff's contention is
that, the defendant having adopted a uniform practice of stopping all north-
bound trains at the station before crossing the highway, she was justified in
proceeding. The question is important and not free from difficulty. "In
general it may be imprudent to enter upon a track where a locomotive is ap-
proaching. Whether it is so in a particular case must depend upon the circum-
stances under which the attempt is made. And where, though in fact it may
be hazardous, a traveler does so in consequence of the acts of the defendant,
he cannot be charged with negligence unless the risk or danger was apparent.
In this case the engine, although in motion, made no signal that it was to
pass the crossing; but a signal was given by its owners that it was not

to pass. The track and the moving engine were signs of danger, but the engine, although moving, was not dangerous unless it passed the crossing." Palmer v. N. Y. C. & H. R. R. Co., 112 N. Y. 235, 19 N. E. 678. The defendant by its method of operation had created a condition which I think a jury might say justifies the plaintiff in supposing that this train would not run across this highway without stopping. They might find that she was misled, or, to use the words of Chief Judge Ruger, "lulled into a sense of security," by the immunity which she had enjoyed. Parsons v. N. Y. C. & H. R. R. Co., 113 N. Y. 355, 21 N. E. 145, 3 L. R. A. 683, 10 Am. St. Rep. 450.

Having in view this long line of decisions imposing the obligation of care and caution on travelers on the highway when crossing steam railroad tracks, an obligation, the maintenance of which is I think of great importance to the public, as well as the railroad companies, I have had some hesitation in arriving at this conclusion; but under the law as laid down in the cases cited, and in the more recent case of Beecher v. L. I. R. R. Co., 35 App. Div. 292, 55 N. Y. Supp. 23, affirmed 161 N. Y. 222, 55 N. E. 899, I think the verdict must stand. It is true that in this case the plaintiff was injured at a highway crossing, and had not entered the defendant's station; but I think the principles laid down in the cases referred to govern here. The amount of the verdict is liberal, but I cannot say that it is excessive. The defendant's motions for a nonsuit, and to set aside the verdict and for a new trial, are denied.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

I. R. Oeland, for appellant.
Stephen C. Baldwin, for respondent.

JENKS, J. In view of the satisfactory opinion of Kelly, J., on the motion for a new trial, hereto appended, full discussion is unnecessary. I think that the plaintiff was not chargeable with contributory negligence as a matter of law in assuming that the approaching train would not continue on its way up to the point where she attempted to cross. She is entitled to the most favorable inferences. Smith v. N. Y. C. & H. R. R. R. Co., 177 N. Y. 224, 66 N. E. 427. In that case the court, per Werner, J., say:

"Was the plaintiff's intestate reasonably and ordinarily careful of his own safety in the circumstances? It cannot be said that intelligent and reasonable men, applying the rule of ordinary care to the facts of this case, could not fairly differ in their answers to this question, and therefore it is one for the arbitration of a jury, and not for the decision of a court."

So, too, in Canning v. Buffalo, R. & P. Ry. Co., 168 N. Y. 555, 61 N. E. 901, Cullen, J., for the court, says:

"Therefore the question to be determined in this case is whether it can be said that as a matter of law the plaintiff recklessly approached a known danger or took doubtful chances of passing safely in front of the train, or whether under the circumstances of the case it was a question as to which prudent men might reasonably differ."

And in Parsons v. N. Y. C. & H. R. R. R. Co., 113 N. Y. 355, 21 N. E. 145, 3 L. R. A. 683, 10 Am. St. Rep. 450, the court, per Ruger, C. J., say:

"The law does not forbid persons from crossing railroad tracks, or impose upon them exclusive responsibility for damages incurred in making such an attempt. The question is whether the injured party, under all of the circumstances of the case, exercised that degree of care and caution which prudent persons of ordinary intelligence usually exercise under like circumstances. This rule must in all cases, except those marked by gross and inexcusable negligence, render the question involved one of fact for the jury."

The plaintiff desired to go to the station of the defendant in order to take passage on its train, which was scheduled to stop there at a particular time for passengers. To reach the platform of the station she was compelled to cross the rails at grade. The plaintiff was not held to the rule that applies to a mere traveler crossing a railroad track on a public highway. Terry v. Jewett, 78 N. Y. 338; Brassell v. N. Y. C. & H. R. R. R. Co., 84 N. Y. 241; Warner v. Baltimore & Ohio Railroad Co., 168 U. S. 339, 18 Sup. Ct. 68, 42 L. Ed. 491. Upon the evidence the jury could have found properly that the plaintiff, seeking the station to take the train, need not "exercise the same circumspection and care" as a traveler on the highway or a trespasser. Warner v. Baltimore & Ohio Railroad Co., supra. In determining whether the plaintiff was justified in attempting to cross the tracks, there are certain circumstances which were germane, in that they may have implied an invitation to the plaintiff. The place of the station relative to the situation of the tracks, which required her to cross the tracks at grade in order to take the train, might warrant her in concluding that she would not be put in jeopardy when thus seeking to gain the platform. Jewett v. Klein, 27 N. J. Eq. 550, cited with approval in Terry v. Jewett, supra. Indeed, in that case Dalrimple, J., for the court, says that under similar circumstances a passenger was "fully justified in concluding that he would be safe from harm from a train on the track, which he was thus obliged to cross in order to secure his passage." See, too, Warner v. Baltimore & Ohio Railroad Co., supra.

There is evidence that the plaintiff, who had lived in the neighborhood for 16 years and had taken these trains constantly, believed reasonably that it was the uniform custom of all trains to stop before coming to the point at which she attempted the crossing. See Beecher v. Long Island R. R. Co., 35 App. Div. 292, 294, 55 N. Y. Supp. 23, affirmed 161 N. Y. 222, 55 N. E. 899. This case may be discriminated from the criticism of Cullen, J., in Beecher's Case, at page 300 of 35 App. Div., at page 28 of 55 N. Y. Supp., in that the evidence in this case for the plaintiff was that the custom was practically uniform.

There was evidence that the train which struck the plaintiff approached, passed the crossing, and came upon her with unabated speed, and without any notification that it was to continue on its course by platform and by station, in departure from this uniform custom of stoppage. It might be concluded that the plaintiff would have been justified in assuming that the train would give some warning of such a course. In Dublin, Wicklow & Wexford R. R. Co., 3 App. Cas. 1115, Lord Selborne said:

"Where there is a crossing so used at a station, where a train by which an intending passenger proposes to travel may stop, and where by the arrangement of the company another train not stopping there may also be appointed to pass through that station from the opposite direction about the same time, it appears to me to be the duty of the company to use proper and sufficient means to give warning of the approach of such other train," etc.

See, too, Vandewater v. N. Y. & N. E. R. R. Co., 135 N. Y. 583, 588, 32 N. E. 636, 18 L. R. A. 771; Henavie v. N. Y. C. & H. R. R. R. Co., 166 N. Y. 280, 284, 59 N. E. 901.

The question of omitted signals is not up in this case, as if the plaintiff had not seen the train; but I think that that omission may be considered in scrutinizing the conduct of the plaintiff in her attempt to cross the tracks. In Dublin, Wicklow & Wexford R. R. Co., supra, Lord Selborne said:

"But, as the present case actually stands, and upon the supposition, which has been affirmed by the verdict, that there was no whistling, the question of contributory negligence appears to me to be one particularly fit to be submitted to the jury. I could not on that supposition say that the jury were drawing inferences which they were not entitled to draw from the evidence, if they thought that the deceased might have been put off his guard and induced to cross the line at the time and in the manner he did by the practice, on the one hand, of the company with respect to the use of this crossing for passengers alighting from or going with their friends to meet trains stopping at the station, and by this omisssion, on the other hand, to give the usual notice by whistling of the approach of this particular express train."

See, too, Parsons v. N. Y. C. & H. R. R. R. Co., 113 N. Y. 363, 21 N. E. 145, 3 L. R. A. 683, 10 Am. St. Rep. 450; McNamara v. N. Y. C. & H. R. R. Co., 136 N. Y. 650, 32 N. E. 765; Doyle v. Pennsylvania & N. Y. Canal & R. R. Co., 139 N. Y. 637, 639, 34 N. E. 1063; Warner v. Baltimore & Ohio R. R. Co., supra.

My Brother, who dissents, writes:

"It should not avail the plaintiff that she believed the train would stop, for a train stopping could properly reach the point of the accident, less than a car's length beyond the rear of the down train."

I do not think that the evidence warrants this statement as bearing upon contributory negligence as matter of law, but that the jury were free to conclude that a train about to stop at that station in the usual and proper manner would not reach the point of the plaintiff's crossing. The defendant maintained a concrete platform 120 feet long in connection with its station. Examination of the map in evidence shows that the end of that platform nearest Eighty-Fourth street was 9 feet 2 inches distant from the nearest curb line thereof, and that there was a space of 36 feet from that curb line to the further curb line. The roadway of the street is covered with boarding. The plaintiff, when crossing, was on the Brooklyn side, the further side, the north side of the board crossing. If this be correct, she must have been in Eighty-Fourth street, and at least 9 feet plus 15 feet, or 24 feet (and may have been nearly 39 feet, and she says about 35 feet), distant from the end of the concrete platform. Now, let us consider all of the evidence as to the point reached by trains which stopped at the station and its adjunct, this concrete platform. The plaintiff testifies that when she saw trains stop there they stopped at about the end of the concrete platform. Her witness Brilles testifies that they stopped half a foot or a foot over the concrete platform. Her witness Gillespie testifies that trains stopped within the concrete, this side of Eighty-Fourth street; that it stops before it goes on Eighty-Fourth street. Plaintiff's witness Foley testifies that they stopped before they went to Eighty-Fourth street, in front of the platform, "generally on about a line with the station sidewalk, as near as I can recollect." Her

witness Voorhees testifies that he never saw a train stop at the depot with any part of the train over on to Eighty-Fourth street, afterwards qualified by the statement that at some times the front of the cars would "reach on" the planking—not as a general thing; nor was he materially shaken on cross-examination, for in answer to the question as to the extension of the train over Eighty-Fourth street under certain conditions, he said, "Yes, it would, if it did; but I never see them," and he reiterates, on the redirect, "I say they never cross the crossing." The plaintiff's witness P. Mayott testifies that when trains stopped with reference to the station platform the front of the car stopped right on the end of the platform. On cross-examination he says it might run a little "on the sidewalk," "not a foot away from the end of the platform." His testimony as to 35 or 40 feet, it must be noted, is as to the distance of the rear platform of the first car from the end of the concrete platform; that is, the rear end was that far back from the end of the concrete towards Eighty-Fourth, not Eighty-Fifth, street. This is clear from the context, in view of his location of the front platform of the car, made in answer to the previous question, "not a foot away from the end of the platform."

If the jury accepted the evidence adduced by the plaintiff as to the position of trains stopping at the station, they were clearly justified in the conclusion that the plaintiff crossed at a point never reached by the trains which stopped at that station, for she was at least 23 feet distant therefrom. There is evidence in contradiction, adduced by the defendant. Its motorman testifies that they usually stopped so as to get the front of the cars right across Eighty-Fourth street; that "it would go right across the street." A former employé, Vance, testifies that, when they have a four-car train and they stop, the front of the car extends over the sidewalk—"I think" that the front car generally runs over past the concrete platform. Uhlenbush testifies that some would stop before, the front of the car would stop just at Eighty-Fourth street, and others would cross over. Roth testifies that the point of stoppage differed according to the number of cars; that three-car trains generally stopped at the head of Eighty-Fourth street, but that four-car trains "have got to stop over Eighty-Fourth street in order to have the platform to reach the lower platform." On cross-examination he testifies:

"The trains running around between 10 and 11 in the morning at that time were three-car trains, generally. Those regular passenger trains were three-car trains. Those trains, the three-car trains, when they stopped, would stop so that all of the train was opposite the cement platform."

As the evidence warranted the inference by the jury that the trains in the operation of stopping never reached the point where the plaintiff crossed, but there was always a space from at least 23 to possibly 35 feet between the head of the train and her place of crossing, it seems to me that it cannot be said properly that:

"It should not avail the plaintiff that she believed the train would stop, for a train stopping could properly reach the point of the accident less than a car's length beyond the rear of the down train."

The judgment and order must be affirmed, with costs.

HIRSCHBERG, P. J., and RICH and MILLER, JJ., concur.

WOODWARD, J. (dissenting). I dissent. In order to cross both tracks preparatory to taking an up train, the plaintiff and her husband waited for a down train to pass and stop opposite the station. Upon her direct examination the plaintiff testified:

"My husband crossed behind the train that had come in from the city, and I looked down and saw the train coming after I passed the back of this stopped car, or stopped train. Q. When you passed behind this stationary train, and looked down, and saw the train coming, where was that train? A. Well, it was about entering the station. * * * Q. So what did you do? A. I made a detour up the track to clear the— Q. Towards Brooklyn? * * * A. Yes sir—to clear the train. * * * When I came out from behind that stationary train, and saw this train coming in, I thought that this was that 10:53 train which I wanted to catch. I received a dreadful blow on the head."

This is substantially all of the plaintiff's direct testimony as to her movements immediately before the accident. Upon the cross-examination, she explained that from her position between the tracks, near the rear of the stationary train, whence she last looked at the approaching train, her "detour" extended about 35 feet in the direction in which the latter train was running. In other words, after her last look, when she could have crossed in safety the single remaining track, she turned her back on the approaching train and walked about 35 feet without looking, before attempting to cross; the train then being immediately upon her. It should not avail the plaintiff that she believed the train would stop, for a train stopping could properly reach the point of the accident, less than a car's length beyond the rear of the down train.

I think that the plaintiff was guilty of contributory negligence as matter of law, and that the judgment should be reversed.