(109 App. Div. 793)

## TINGLEY v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department.    December 29, 1905.)

1. RAILROADS—INJURIES AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action against a railroad for the death of a person crossing its tracks at a crossing where the view was obstructed, whether deceased was guilty of contributory negligence *held*, under the evidence, a question for the jury.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1057–1070, 1152–1192.]

2. CARRIERS—PASSENGERS—INSPECTION OF RAILWAY.

One who is on his way to a station with the intention of taking a train, but who is struck while crossing the tracks by an approaching train before he reaches the railroad's station premises, is not, at the time he is struck, a passenger.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 985.]

3. SAME—INJURIES TO PASSENGERS—EXEMPTION FROM LIABILITY—PROVISIONS OF PASS.

A provision in a pass exempting a railroad from liability for injuries resulting from the negligence of its agents and servants is of no effect as against a statute giving damages to the widow and next of kin of a passenger whose death results from the negligence of the railroad and its servants.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 1252, 1253.]

4. APPEAL—ADMISSION OF EVIDENCE—CURE BY SUBSEQUENT EXCLUSION.

Error in the admission of evidence as to an instrument is not cured by finally excluding the instrument from evidence, where, prior to such final ruling, the objectionable testimony has been heard by the jury and has worked its prejudicial effect.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, § 4178.]

5. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS—WHO ARE FELLOW SERVANTS.

The employment of a physican by a railroad, under a contract by which the physician agrees to attend employés and passengers of the railroad when called upon to do so, does not make the physician a fellow servant with railroad operatives by whose negligence the physician is killed while crossing the railroad's tracks on his way to the station to take a train to attend one of his own patients.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 475–479, 493–514.]

Appeal from Trial Term, Queens County.

Action by Addie R. Tingley, as executrix of the last will and testament of Hilbert B. Tingley, deceased, against the Long Island Railroad Company. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and RICH, JJ.

W. W. Goodrich, for appellant.
W. C. Beecher, for respondent.

WOODWARD, J.   The plaintiff's husband, Dr. Hilbert B. Tingley, while endeavoring to cross in front of, or while attempting to board,

one of the defendant's trains running west at Holland's Station, in the county of Queens, on the afternoon of January 14, 1903, was struck by the train and almost instantly killed. Upon the trial of the action brought under the statute to recover damages for wrongfully causing his death, the jury rendered a verdict for the defendant. At Holland's Station the defendant's railroad tracks extend east and west; the west-bound track being on the north and the east-bound track on the south. They are crossed at right angles by BayView avenue on the east and Holland avenue on the west, while midway between these highways, and parallel thereto, Oceanus avenue extends to the tracks, dividing the land on the south of the tracks into two 200-feet blocks. The depot waiting room is on the south side of the tracks, occupying the northeast corner of the block between Oceanus avenue and Holland avenue, and a platform extends from the depot westward to Holland avenue. A picket fence, 7½ feet high, between this platform and the nearer track, extends westward across Holland avenue, with gates opposite the depot and at Holland avenue. There is also a similar fence between the tracks with a gate on Holland avenue 14½ feet wide, the width of the other Holland avenue gate. On the northern side of the tracks, and parallel thereto, is a platform extending from Holland avenue to BayView avenue, more than 400 feet, at the eastern end of which is an "express station." Dr. Tingley resided a block south of the railroad tracks and about the same distance west of Holland avenue; his house commanding a view of the tracks in front of the station, as the intervening lands were practically vacant. It appears from the plaintiff's testimony that west-bound passenger trains customarily stopped first at the "express station" and then proceeded to the depot, where they stopped if there were passengers waiting, before crossing Holland avenue. She testified that on the afternoon of the accident her husband left the house to board a west-bound train due at Holland's Station shortly before 3. He crossed the vacant lot, pursuing a straight course for the Holland avenue gates, and from her veranda she saw him look to the right and' left as he entered the first of the gates, both of which were open; unguarded, and about 25 feet apart. As he passed through the second gate, she saw him raise his right hand, and at the same moment she heard a quick sharp whistle from the engine; the first signal she had heard from the approaching west-bound train. The doctor immediately began to run, looking in the direction of the train, which the plaintiff did not see till about the moment it struck him. She saw him struck by the front of the engine and thrown down. Running toward the place of the accident, she was stopped by a man at the gate, who turned her around. She then swooned, and was carried home. It also appeared that the train had stopped at the "express station," but not at the depot, and it may fairly be inferred from the evidence that the double line of high fence obstructed the doctor's view of the train until he had passed the second gate, when it was too late for him to escape.

Taking the view most favorable to the plaintiff, the case was properly one for the jury. The situation was much like that in the case of Mackay v. N. Y. Central R. R. Co., 35 N. Y. 75, where the crossing was at grade and unprotected by a flagman, and the defendant had piled

beside the track rows of wood which obstructed the view of the plaintiff's intestate as he attempted to cross.   The court held that he was not guilty of contributory negligence in failing to look toward the approaching train until he had passed the wood piles, when it was too late for him to stop.

In the recent case of Cranch v. Brooklyn Heights R. R. Co., 107 App. Div. 341, 95 N. .Y. Supp. 169, where the plaintiff attempted to cross in front of an approaching train which she rightfully assumed would stop at the station, but did not, a situation much like that presented in the case at bar, Mr. Justice Jenks, writing the prevailing opinion on the affirmance of the judgment for the plaintiff, says (page 342 of 107 App. Div. and page 171 of 95 N. Y. Supp.) :

"I think that the plaintiff was not chargeable with contributory negligence as a matter of law in assuming that the approaching train would not continue on its way up to the point where she attempted to cross.  She is entitled to the most favorable inferences.  Smith v. N. Y. C. & H. R. R. R. Co., 177 N. Y. 224, 69 N. E. 427."

I dissented in the Cranch Case solely because the plaintiff, after seeing the approaching train, and being able to cross in safety, deliberately turned her back to the train and made a detour which brought her into collision with it.

The learned counsel for the appellant earnestly argues that error was committed in the admission of evidence that the doctor had a pass from the defendant.  The following quotation from the record will make this clear:

"Peter H. Woodward, called as a witness for the defendant, duly sworn, testified (direct examination by Mr. Beecher): I am in the employ of the Long Island Railroad, in the express department. This signature on this card is mine. Q. Did you in January have anything to do with regard to issuing passes on the Long Island Railroad? A. Yes, sir. That was one of my duties. Q. Do you know whether or not a pass was issued to Dr. Hilbert B. Tingley, in January, 1903? (Objected to as immaterial and irrelevant. The Court: Objection overruled. Mr. Goodrich: I except.) A. Yes, sir; it was issued around the 1st of January, or previous to that. This is a copy of the pass which was issued. The conditions on the back was (sic) contained on the pass issued to Dr. Tingley. (Mr. Goodrich: I object to that on the same grounds as immaterial and irrelevant, and move to strike the answer out. The Court: The objection is overruled. The motion to strike out is denied. Mr. Goodrich: I except.) Defendant's Counsel: I offer in evidence the pass; they having failed to present the original. (Objected to as immaterial and irrelevant, and on the further ground that it is not shown that that pass was in the possession of Dr. Tingley at the time of this accident, or that he was using it. The Court: I do not consider that it is material or relevant. I will sustain the objection, and give defendant an exception, and permit it to be marked for identification. Marked Exhibit No. 2 for identification.)"

The doctor was not a passenger because he had not reached the station.   June v. Boston & Albany Railroad, 153 Mass. 79, 26 N. E. 238. He had not even reached the defendant's premises, being on Holland avenue when struck, but, even if he had been a passenger, according to another Massachusetts authority, a provision in the pass exempting the company from liability for injuries resulting from the negligence of its agents and servants is of no effect as against a statute by which damages are given to the widow and next of kin of a passenger whose

death results from the negligence of the company or its servants. Doyle
v. Fitchburg Railroad, 162 Mass. 66, 37 N. E. 770, 25 L. R. A. 157,
44 Am. St. Rep. 335. In that case the court say (page 70 of 162 Mass.,
page 771 of 37 N. E. [25 L. R. A. 157, 44 Am. St. Rep. 335]):

"It is clear that a person may at one time be an employé when passing
over a railroad, and at another time in passing over the same road be a
passenger, though continuing all the while, in a popular sense, in the employ-
ment of the railroad company. The ticket on which the plaintiff's intestate
was riding was not a mere gratuity. It furnished part of the consideration
by which he was induced to enter the employment of the defendant."

The objectionable testimony was admitted, as appears above, over
the repeated objection of the plaintiff's counsel, who duly excepted and
whose motion to strike out was denied. While the learned trial justice
sustained the objection to the admission of a copy of the pass, the er-
ror was not thus cured, for all the earlier testimony as to the pass was
in, and must have had upon the jury an effect quite prejudicial to the
plaintiff's case.

I also think the court erred in allowing the defendant to prove the
contract by which the deceased had agreed to attend surgically the
employés and passengers of the defendant when called upon so to do
by its officers and agents. Clearly such employment did not make him
a fellow servant, and at the time of the accident he was going to at-
tend one of his own patients.

For these reasons, I think the judgment should be reversed and a
new trial granted.

Judgment and order reversed, and new trial granted; costs to abide the
event. All concur, except BARTLETT, J., not voting.